**BUTZMAN v. UNITED STATES.**
**CRAIG v. UNITED STATES.**
Nos. 11704, 11705.

United States Court of Appeals,
Sixth Circuit.
June 22, 1953.
Writ of Certiorari Denied Oct. 12, 1953.
See 74 S.Ct. 50.

Daniel H. Wasserman, Cleveland, Ohio (Michael Leo Looney, Washington, D. C., on the brief), for Lester E. Butzman, Sr.

Paul P. Cohen, Niagara Falls, N. Y. (Cohen, Fleischmann, Augspurger, Henderson & Campbell, Niagara Falls, N. Y., of counsel), for Gilbert M. Craig.

Frank E. Steel, Cleveland, Ohio (John J Kane, Jr., Cleveland, Ohio, on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, Lester E. Butzman, Sr., was found guilty in the District Court and received a sentence of three years for falsely and fraudulently executing a document required by the provisions of the Internal Revenue laws, § 3793(a) (1), Title 26 U.S.Code. Appellant, Gilbert M. Craig, was also found guilty in the same

trial and received a sentence of one and one-half years for wilfully aiding and advising the preparation and presentation to the Collector of Internal Revenue of a false and fraudulent document executed by the appellant Butzman, § 3793(b) (1), Title 26 U.S.Code. Although separate indictments were returned, the appellants were represented by the same attorney, and, upon motion by the Government, the cases were consolidated for trial. They were heard by the Court without a jury. The appeals come to us on a single record. The appeals will be disposed of separately.

In case No. 11704, the indictment charged that on January 14, 1946, Butzman "did wilfully and knowingly, falsely and fraudulently, with intent to defraud, execute a document required by the provisions of the Internal Revenue Laws and Regulations, to-wit: Application for Tentative Adjustment with Respect to Amortization Deduction, which document was filed with the Collector of Internal Revenue * * *, in which document it is represented that the said Lester E. Butzman, Sr., was entitled under the provisions of the Internal Revenue laws to claim a credit for the years 1941, 1942 and 1944 of refunds totaling $56,078.61, whereas as the said defendant then and there well knew the information contained in the application aforesaid was false and untrue, in that the Necessity Certificates which formed the basis of the claim for the refund in said Application had not been granted and the said defendant was not entitled to the refund as claimed; * * * "

There was evidence showing the following facts: The appellant started his employment with the Ohio Tool Company in 1922 at which time the Company was a partnership operating a small specialty machine shop. During the 1930s he became the sole owner of the business. The business underwent a tremendous expansion in its operations after the start of the War in 1939. About the end of 1937, William J. Franz was employed to do the accounting work for the company. In 1941, at the suggestion of Franz, the business was made a family partnership consisting of the appellant, his son Lester E. Butzman, Jr., and his daughter Betty Jane Downs.

On October 8, 1940, § 124, Internal Revenue Code, 26 U.S.C. § 124, was enacted as part of the defense mobilization program. It provided for an accelerated amortization deduction of emergency facilities installed by the taxpayer, based on a period of sixty months, upon an election by the taxpayer to do so, made by filing a statement of such election with the Commissioner. § 124(d) (4), Internal Revenue Code. The procedure was for the taxpayer to file an application with the War Department, upon which, after being processed, a certificate would be issued certifying the facility as necessary in the interest of national defense during the emergency period. Such a certificate would entitle the applicant to write off the cost of the facility over a five-year period. This was in lieu of the deduction with respect to such facility provided by § 23(l), Internal Revenue Code, 26 U.S.C.A. § 23(l), relating to exhaustion, wear and tear, and obsolescence. Sometime in 1942, Franz discussed with appellant about making application to take advantage of this amortization deduction, and appellant gave Franz a power of attorney for the purpose of making such applications. On April 23, 1943, an informal application was filed with the War Department, Tax Amortization Branch, followed by a formal application dated May 21, 1943, in the amount of $853,840.78, which was given the number WD–N–22024. Another application for the amount of $67,994.02 was also filed on June 26, 1943, which was given the number WD–N–23426.

On September 11, 1943, a preliminary notice of rejection was mailed to the Ohio Tool Company which stated that application No. WD–N–22024 was untimely and that there were adequate facilities in existence. This was followed by an official letter of rejection mailed on October 9, 1943. Application No. WD–N–23426 was officially rejected by letter of October 8, 1943 on the ground that there was insufficient evidence of shortage of capacity in the industry. These letters, after being

received by the Company, were turned over to Franz.

Differences arose between Butzman and Franz, and about November 1, 1943, appellant Craig was employed by the Company as Comptroller on a full-time basis, for the purpose of taking over Franz's work and to generally supervise the office. The Company's own accounting staff did not take over the entire accounting work until the Spring of 1944. At approximately that time Franz turned over to Craig the greater part, but not all, of his files with respect to the Ohio Tool Company. One of the files retained by Franz contained the letter of October 9, 1943 from the War Department denying the Company's application WD–N–22024. The other letter of rejection was not located, either in Franz's files or the Company's files.

On July 31, 1945, Congress enacted the "Tax Adjustment Act of 1945" which permitted war production facilities which became substantially worthless at the close of the War to be amortized retroactively over the period from 1940 to 1945. § 7 of the Act, § 124(j) and (k), Internal Revenue Code, provided for the filing of an application by a taxpayer who had elected to take the amortization deduction under § 124(d)(4) for tentative adjustment with respect to the taxes for taxable years prior to the taxable year in which the application was filed. In September, 1945, the President proclaimed the ending of the emergency period as defined in § 124 (e) (2) of the Internal Revenue Code. Smith, an employee in the Company's accounting department, having become advised of the Tax Adjustment Act, recommended that applications be filed for adjustment of the tax liabilities for 1941–1944 and for refunds payable pursuant to such adjustments. He discussed the matter with Craig and with Internal Revenue agent Coleman, who was working at the Ohio Tool Company plant. On December 20, 1945, Craig wrote the Commissioner of Internal Revenue that the Ohio Tool Company elected to amortize the Emergency Facilities covered by Certificates of Necessity within the period covered by the President's proclamation to September 30, 1945. This letter stated: "The following Certificates of Necessity are affected: WD–N–22024, WD–N–23426." By letter of December 29, 1945, the Commissioner acknowledged receipt of this election, advising that the election did not constitute a claim for credit or refund, and that if a tentative adjustment with respect to amortization deduction under section 7 of the Tax Adjustment Act of 1945 was desired, application should be filed with the Collector for its district on Form 1046, which could be obtained from the Collector. Smith obtained the forms from the local Internal Revenue office, and prepared and filed an application for each of the three partners. Butzman's application, signed by him, was filed with the Internal Revenue office by Smith on January 14, 1946. It is this application which is the basis of the present proceedings.

The application specifically referred to Necessity Certificates Nos. WD–N–22024 and WD–N–23426, the election by the Company on December 20, 1945 to terminate the amortization period under the authority of the President's Proclamation, and the termination of the amortization period by reason thereof on September 30, 1945. It was supported by detailed amortization schedules and copies of original income tax returns for 1941–1944 of both the partnership and Butzman individually, together with recomputed tax returns for the partnership and Butzman individually for the same years on the basis of the accelerated amortization.

Internal Revenue Agent Coleman was working at the plant of the Company in connection with an audit of the returns of the partnership and its members. Shortly prior to May 3, 1946, he asked Craig to show him Certificates of Necessity WD–N–22024 and WD–N–23426. They were not located in the Company's files, and at a conference on May 3, 1947, in Franz's office, Franz found in his files one of the two letters, but not both, which denied the applications for the two Certificates of Necessity. The Company's attorney, thinking that possibly a reapplication had been made and approved, promptly thereafter wrote to the Commissioner requesting cer-

tified copies of the two Certificates and was advised by the Tax Amortization Branch, Civilian Production Administration by letter of July 1, 1946, that the files indicated that the two applications were never approved but were denied by letters of October 8th and 9th, 1943.

In the meantime, the three partners received checks from the Treasurer of the United States for refunds totaling approximately $109,000, dated June 11th and 13th, 1946. Smith checked the amounts, which totaled $1,000 more than they were entitled to, and upon instructions from Craig refunded that amount to the Government. The proceeds of the checks were deposited in the account of the Ohio Tool Company. The Bureau made no demand for a return of the money. The money was not repaid to the Government after the partners were advised that the Certificates of Necessity had not been issued, Craig taking the position that the partners were entitled to refunds in accordance with general accounting principles of obsolescence and amortization. Coleman made a report dated August 2, 1946, recommending that the application be reassessed, and that the resulting taxes be assessed back to the taxpayer for each of the years involved. At the time of the trial there had been no final determination of what refund, if any, the partners were entitled to in accordance with general accounting principles of obsolescence and amortization.

■ Appellant's first contention is that the indictment is invalid because it charges the appellant in general terms with having committed a crime, instead of charging him with commission of specific acts which would constitute a commission of the alleged crime. We recognize the general rule that an indictment is insufficient if it states conclusions rather than the facts upon which the conclusions are based. Johnson v. United States, 9 Cir., 294 F. 753, 755; Boykin v. United States, 5 Cir., 11 F.2d 484, 485; Alabama Packing Co. v. United States, 5 Cir., 167 F.2d 179, 181–182. However, such facts need not be stated in detail. Rule 7(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., provides "The indictment or the informa-

tion shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient to meet modern requirements if it alleges basic facts covering the essential elements of the crime against the United States with enough particularity to fairly apprise the defendant of the nature of the charge and to enable him to protect himself from a subsequent prosecution for the same offense. Todorow v. United States, 9 Cir., 173 F.2d 439, 446–447; Ross v. United States, 6 Cir., 180 F.2d 160, 164. Appellant bases his contention upon that part of the indictment which alleges that the document represented that Butzman "was entitled under the provisions of the Internal Revenue laws to claim a credit for the years 1941, 1942 and 1944 of refunds totaling $56,078.61," which he claims is a representation of law. However, before that allegation is made the indictment alleges, using the words of the statute, that the appellant did on January 14, 1946, in the Eastern Division of the Northern District of Ohio, falsely execute a document required by the provisions of the Internal Revenue laws. This is an allegation of fact rather than a conclusion of guilt. The remainder of the indictment gives additional facts which identify the particular document referred to. Appellant did not make a motion to dismiss the indictment, nor did he ask for a bill of particulars, but went to trial on the indictment. In our opinion, the allegations are sufficient. Leonard v. United States, 6 Cir., 18 F.2d 208, 211–212; Koa Gora v. Territory of Hawaii, 9 Cir., 152 F.2d 933, 935. Upon a proceeding after judgment, no prejudice being shown, it is enough that the necessary facts appear in any form or by fair consideration can be found within the terms of the indictment. Hagner v. United States, 285 U.S. 427, 433, 52 S.Ct. 417, 76 L.Ed. 861; Gariepy v. United States, 6 Cir., 189 F.2d 459, 461; Keys v. United States, 8 Cir., 126 F.2d 181, 185.

■■ Of a similar nature is the appellant's contention that the indictment does not charge him with a crime in alleging that the appellant represented that he was entitled under the provisions of the Internal

Revenue laws to a credit for the taxable years in question, in that such a representation was not false, due to the fact that appellant was actually entitled to a credit under the general accounting principles of obsolescence and amortization provided by Sec. 23(*l*) Internal Revenue Code. The charge in the indictment is not limited to such a representation. It charges the appellant with falsely executing a document described as an Application for Tentative Adjustment with Respect to Amortization Deduction, which document represented, on the basis of facts which the appellant knew to be untrue, that the appellant was entitled to an income tax credit. The indictment must be considered in its entirety. So considered, we are of the opinion that the indictment does not charge him with falsely claiming a refund but charges him with falsely executing a particular type of document which contained facts which were not true. Appellant's argument on this point fails to meet the issue.

Appellant also contends that as a matter of law there was no intent on his part to defraud the Government, because the Government knew through its own files that the Certificates of Necessity had not been issued, and that any representation by the appellant to the contrary was not calculated to deceive, because it was made to the party who had actual knowledge of its falsity. In order to defraud the Government pecuniary loss to the Government is not necessary. Any impairment of the administration of its governmental functions is sufficient. United States v. Goldsmith, 2 Cir., 68 F.2d 5, 7; Johnson v. Warden, 9 Cir., 134 F.2d 166, 167; United States v. Tynan, D.C.S.D.N.Y., 6 F.2d 668, 669. The commission of the crime is not dependent upon the success of the fraudulent intent. Thacher v. United States, 23 Fed. Cas. page 875, No. 13,851, affirmed In re Thatchers Distilled Spirits, 103 U.S. 679, 26 L.Ed. 535. See United States v. Kapp, 302 U.S. 214, 217-218, 58 S.Ct. 182, 82 L.Ed. 205. Nevertheless, in the present case the Government acted upon the misrepresentations, was actually deceived by them, and paid money which it would not have paid except for such misrepresenta-

tions. Under the circumstances of this case, we think that the District Judge was justified in finding that the Government officials charged with the duty of passing upon the application, had the right to rely upon the representations without making an independent investigation of Government records, and that the evidence sustains his finding that the Application was executed and filed with the intent to defraud. Buckley v. Buckley, 230 Mich. 504, 509, 202 N.W. 955; Western Mfg. Co. v. Cotton & Long, 126 Ky. 749, 755-757, 104 S.W. 758, 12 L.R.A.,N.S., 427; Morrison v. Bank of Mount Hope, 124 W.Va. 478, 20 S.E.2d 790; Strand v. Griffith, 8 Cir., 97 F. 854.

Appellant also contends that the evidence was insufficient to justify a finding of guilt, in that it failed to show beyond a reasonable doubt that he had knowledge that the Certificates of Necessity had not been issued. His contention is that although the letters of rejection were received by the Company, the matter was handled by Franz and the auditing department, and such information was not brought to his attention. Although three witnesses, Franz, Figley, who was an employee of Franz, and Voos, a civilian employee in the Ordnance Department at Cleveland, testified that appellant knew that the Certificates of Necessity had not been issued, appellant claims that these witnesses were biased and prejudiced, and that the Court should have accepted his own testimony to the contrary. The trial judge, in his oral opinion, discussed the credibility of these witnesses at considerable length, and concluded that there was sufficient credible testimony from them to prove knowledge on the part of the appellant. It is well settled that the credibility of witnesses is a question for the trial judge. Goldman v. United States, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410; Hawk v. Olson, 326 U.S. 271, 279, 66 S.Ct. 116, 90 L.Ed. 61; Wilson v. United States, 6 Cir., 149 F.2d 780, 782.

Appellant contends that the Court erred in overruling his motion for a change of venue. The motion was based upon several news articles and a cartoon

appearing in different editions of the Cleveland Press, which depicted appellant as a war profiteer and a tax dodger, and as one, who although having gone through bankruptcy, was nevertheless able to own a big Florida ranch on which he lived in ease and comfort. The motion claimed that the publication of these articles had created so great a prejudice against the appellant that he could not obtain a fair and impartial trial in the district where the indictment was returned. The District Judge was of the opinion that the circulation of the Cleveland Press was largely restricted to Cuyahoga County, in which County Cleveland is located, and pointed out that 28 of the 52 prospective jurors were from outside Cuyahoga County. Being of the opinion that a fair and impartial jury could be obtained from jurors who had not read the articles in question, he overruled the motion. No jurors were questioned. Appellant thereafter waived a trial by jury. He now contends that this was not a voluntary waiver on his part, in that he was forced to do so by the trial court's refusal to sustain his motion for a change of venue. The argument is unsound. A different question would be presented if appellant had carried through with his motion, interrogated the prospective jurors, and shown that a fair and impartial jury could not have been obtained. From the facts disclosed by the present record, it seems entirely possible that such a jury could have been impaneled. Under the circumstances, it was not an abuse of the trial court's discretion in overruling the motion. United States v. Beadon, 2 Cir., 49 F.2d 164, 166, certiorari denied 284 U.S. 625, 52 S.Ct. 11, 76 L.Ed. 533; Kersten v. United States, 10 Cir., 161 F. 2d 337, 339, certiorari denied 331 U.S. 851, 67 S.Ct. 1744, 91 L.Ed. 1859. In any event, the question was waived by appellant's election to be tried by the Court. No complaint is made that he failed to receive a fair and impartial trial by the District Judge who tried the case. The way to have preserved the alleged error was to have proceeded with a trial by jury under protest and let the record show whether the jury as so impaneled provided the ap-

pellant with the fair and impartial trial to which he was entitled. Jones v. Williamsburg City Fire Ins. Co., 85 Kan. 235, 116 P. 484; Grogan-Cochran Lumber Co. v. McWhorter, Tex.Civ.App., 15 S.W.2d 126. In electing to pursue the course which he took, appellant was attempting to obtain whatever advantage might result from the trial without a jury, and if unsuccessful still maintain that the result was not binding upon him. Under such circumstances, the election is clearly binding upon the appellant. Compare Metcalf v. United States, 6 Cir., 195 F.2d 213, 217; Marx v. United States, 8 Cir., 86 F.2d 245, 251; Hagner v. United States, 60 App.D.C. 335, 54 F.2d 446, 449; Levine v. United States, 8 Cir., 182 F.2d 556, 558.

The appellant Craig, in addition to advancing the same arguments on his own behalf as were advanced by Butzman in his appeal, contends that the evidence was insufficient to show that he participated in the preparation or filing of the document on which the indictment was based, that the six year statute of limitations barred the proceeding against him, and that he was deprived of the "Assistance of Counsel" guaranteed by the Sixth Amendment of the Constitution.

■ As shown by the foregoing statement of facts, appellant Craig wrote and signed the letter of December 20, 1945 in which he notified the Commissioner of the Company's election to amortize the Emergency Facilities covered by the two Certificates of Necessity. Although the Application itself was prepared by his assistant, Smith, signed by Butzman, and filed by Smith, the evidence shows that Smith conferred with Craig about making the Application before this letter was written. In our opinion, this evidence was sufficient to sustain a finding that Craig aided, assisted or counseled the preparation of the document in question.

■ Appellant Craig's reliance upon the Statute of Limitations is based on a computation of time starting with the completion of the Application and appendices on or about December 31, 1945, which was more than six years prior to the date of

the indictment, January 10, 1952. However, if the time began to run with the filing of the Application fourteen days later on January 14, 1946, the indictment was not barred by limitations. No crime was committed by Butzman until the Application was filed. No crime would have been committed by Craig if the Application had not been filed. We are of the opinion that the statute did not start to run until the Application was filed on January 14, 1946.

■ The attorney who represented appellant Butzman was the regularly employed attorney of the Ohio Tool Company. He also undertook to represent the appellant Craig. Craig contends that although no conflict of interest might have shown itself when this dual representation was undertaken, a review of the record as a whole shows that such a conflict developed. Reference is made to the fact that it was to the interest of Butzman to shift responsibility for the alleged false document to one or more of his employees, and that it may have been to Butzman's interest, when faced with unfavorable newspaper publicity, to have waived a jury trial, but there was no such reason for waiving such a trial on the part of Craig. Such a conflict of interest deprives an accused of the effective "assistance of counsel" as defined by Supreme Court decisions. Glasser v. United States, 315 U. S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Hayman, 342 U.S. 205, 208, 72 S.Ct. 236, 96 L.Ed. 232. See also Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158. This right is too fundamental to permit a Court to indulge in nice calculations as to the amount of prejudice arising from its denial. Glasser v. United States, supra, 315 U.S. at page 76, 62 S.Ct. 457, 86 L.Ed. 680.

■ It is well settled that the right to the assistance of counsel can be waived. Johnson v. Zerbst, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed. 1461; United States v. Hayman, supra, 342 U.S. at pp. 208–209, 72 S.Ct. 236, 96 L.Ed. 232. However, every reasonable presumption will be indulged against the waiver of such a fundamental right, Glasser v. United States, supra, 315 U.S., at page 70, 62 S.Ct. 457, 86 L.Ed. 680, and the Court should "not presume acquiescence in the loss of fundamental rights." Johnson v. Zerbst, supra, 304 U.S. at page 464, 58 S.Ct. at page 1023, 82 L.Ed. 1461. The Supreme Court also said in Johnson v. Zerbst, supra, 304 U.S. at page 464, 465, 58 S.Ct. at page 1023, that an intelligent waiver of the right to counsel depends upon the particular facts and circumstances in each case, and, "whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

■ Representation by a particular attorney may be under such circumstances as not to meet the constitutional requirement. Glasser v. United States, supra; United States v. Hayman, supra. The issue was not raised in the trial court, and the present record does not show under what circumstances Craig consented to the dual representation. Apparently Craig's present contention is that he did not intelligently and voluntarily waive his right of representation by separate counsel of his own choosing. The Government's contention that such contentions can not be substantiated does not deny appellant the opportunity of supporting them by evidence. Walker v. Johnston, 312 U.S. 275, 287, 61 S.Ct. 574, 85 L.Ed. 830. The issue is one which should properly be presented to the trial court instead of being raised for the first time in this Court on an incomplete record. Sec. 2255, Title 28 U.S. Code, provides for such a hearing. United States v. Hayman, supra. The ruling on the appeal of Craig will be suspended for a reasonable period of time, during which the appellant may present this issue to the trial court, if he so desires, following which the matter may be again brought to us for a final ruling.

The judgment in Lester E. Butzman, Sr. v. United States is affirmed.

The case of Gilbert M. Craig v. United States is remanded to the District Court for further proceedings consistent with the views expressed herein.