## Commonwealth *v.* Taylor, Appellant.

Submitted March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*J. Graham Sale, Jr.* and *John J. Dean,* Assistant Public Defenders, and *George H. Ross,* Public Defender, for appellant.

*Carol Mary Los* and *Robert L. Eberhardt,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, November 17, 1972:

On June 9, 1965, appellant Myles Taylor, represented by court-appointed counsel, entered a plea of guilty to murder generally, the degree of guilt being subsequently fixed at murder in the second degree. Appellant made no post-trial motions and took no appeal.

On October 22, 1969, appellant filed a PCHA[1] petition, alleging numerous grounds for reversal of his conviction. At the hearing on the petition, these grounds narrowed to only two contentions: (1) that appellant's guilty plea was on incompetent advice of counsel and was not knowing and intelligent, and (2) that it was induced by a confession unconstitutionally obtained by police interrogators at a time when appellant was unrepresented by counsel.[2] The lower court

---

[1] Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 et seq.

[2] In his PCHA petition and at the hearing, appellant argued that his rights to a direct appeal had been denied by failure of his counsel to inform him of that right, and that he therefore

denied post-conviction relief after holding the hearing required by §9 of the Act, and that denial is appealed to this Court. We affirm.

At the time of his arrest and the police interrogation which followed it, Myles Taylor was 15 years old and unrepresented by counsel. It is his contention here that either as a matter of law or under the "totality of circumstances" test of *Commonwealth v. Darden,* 441 Pa. 41, 271 A. 2d 257 (1970), he could not be said to have waived his right to counsel under *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977 (1964), and that therefore his confession was obtained through constitutionally impermissible means.[3] Although this Court has in the past refused to erect a *per se* rule of incapacity to make such a waiver based solely on age, *Commonwealth v. Darden, supra, Commonwealth v. Moses,* 446 Pa. 350, 287 A. 2d 131 (1971), the question of waiver of such rights has been troublesome. See,

---

should be entitled to an appeal *nunc pro tunc.* The argument fails for the reason that appellant was convicted of second degree murder on a plea of guilty to murder generally. On direct appeal the only avenues of attack open would have been the validity of the guilty plea and the power of the court to sentence as it did. *Commonwealth v. Culpeper,* 434 Pa. 15, 252 A. 2d 624 (1969). These avenues, of course, are also open on a PCHA petition, 19 P.S. §1180-3, and since those issues are also raisable in this proceeding, no purpose would be served by granting permission to appeal *nunc pro tunc. Commonwealth v. Dillinger,* 440 Pa. 336, 341, 269 A. 2d 505 (1970).

[3] Appellant's conviction predates by a year the decision in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966), which was held in *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882 (1966) not to require retroactive application. Hence, the constitutional standard by which appellant's waiver of counsel would be tested—were the issue reached here—would stem from *Escobedo,* as interpreted by our Court. See, e.g., *Commonwealth v. Schmidt,* 423 Pa. 432, 224 A. 2d 625 (1966) ; *Commonwealth v. Campbell,* 442 Pa. 313, 275 A. 2d 64 (1971).

e.g., *Commonwealth v. Moses, supra,* at 356 (ROBERTS, J., dissenting opinion). Appellant here, however, entered a guilty plea to murder generally on advice of his counsel. Because that guilty plea "is . . . [an] admission in open court that he committed the acts charged in the indictment," appellant's uncounselled confession will be unavailing to him unless he can, at the same time, avoid the counselled guilty plea. *Brady v. United States,* 397 U.S. 742, 748, 25 L. Ed. 2d 747 (1970) ; *Commonwealth v. Stokes,* 426 Pa. 265, 232 A. 2d 193 (1967).

In *Commonwealth v. Marsh,* 440 Pa. 590, 271 A. 2d 481 (1970), we set out the concurrent requirements for attacking a guilty plea allegedly based on an unconstitutional confession. Appellant must demonstrate *all* of the following: (1) that the confession was unconstitutionally obtained; (2) that the confession was the primary motivation for the guilty plea; and (3) that the entry of the guilty plea was on incompetent advice of counsel. See also *Commonwealth v. Moroz,* 444 Pa. 493, 281 A. 2d 842 (1971) ; *McMann v. Richardson,* 397 U.S. 759, 25 L. Ed. 2d 763 (1970) ; *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785 (1970). In a case of this sort, therefore, our initial inquiry "is directed to the reasonableness of counsel's assessment of his client's case and his advice to the client in light thereof, including advice as to the implications and consequences of entering a guilty plea." *Commonwealth v. Ward,* 442 Pa. 351, 354, 275 A. 2d 92 (1971). Here we find that appellant falls well short of showing that counsel's advice as to pleading guilty was incompetent.

Myles Taylor was represented at the time his plea was entered by two counsel appointed by the court in January, 1965. The record of the post-conviction hearing shows that they investigated the facts surrounding

appellant's arrest and filed a motion to suppress the confession for the reason that it was obtained by the police at a time when appellant was not represented by counsel. After a hearing on June 5, 1965 (extending through 165 pages of transcript), the court denied the motion to suppress, finding that Myles Taylor's waiver of counsel was knowing and intelligent, notwithstanding the testimony to the contrary of a doctor of psychology who examined appellant at the request of his counsel. The motion to suppress unsuccessful, the two attorneys then discussed the possibility of a guilty plea with appellant and with his mother and grandfather, and subsequently recommended that course of action.

Under our test for determining the effectiveness of counsel, it appears that the advice offered appellant with regard to his plea was not constitutionally deficient. Here the two court assigned counsel knew the relevant law regarding appellant's uncounseled confession and they properly attempted to capitalize on that law by presenting at a suppression hearing testimony upon which pivotal facts going to the validity of the confession could be found. The suppression court, however, found those facts adversely to appellant. Faced with a confession in the prosecutor's hands, the constitutionality of which had been upheld under first testing, counsels' choice among the alternatives then available was a reasonable one. See *Commonwealth v. Sampson,* 445 Pa. 558, 285 A. 2d 480 (1971); *Commonwealth v. Allen,* 443 Pa. 447, 277 A. 2d 818 (1971); *Commonwealth v. Alvarado,* 442 Pa. 516, 276 A. 2d 526 (1971); *Commonwealth v. Smith,* 442 Pa. 265, 275 A. 2d 98 (1971); *Commonwealth v. Lovett,* 442 Pa. 105, 275 A. 2d 329 (1971); *Commonwealth v. Skipper,* 440 Pa. 576, 271 A. 2d 476 (1970); *Commonwealth v. Woody,* 440 Pa. 569, 271 A. 2d 477 (1970); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235

A. 2d 349 (1967).[4]  It follows that appellant's counsel acted within the range of competence demanded of attorneys in criminal cases.[5]

[4] The Supreme Court of the United States, in testing the competency of an attorney who has advised a guilty plea, has used language to the effect that counsel will not be found constitutionally ineffective unless he was "in gross error" or has committed "serious derelictions." *McMann v. Richardson*, 397 U.S. 759, 772, 774, 25 L. Ed. 2d 763 (1970). To some extent these phrases have been echoed in our opinions. See *Commonwealth v. Moroz*, 444 Pa. 493, 496, 281 A. 2d 842 (1971) ("gross error") ; *Commonwealth v. Brown*, 443 Pa. 21, 27, 275 A. 2d 332 (1971) ("gross error") ; *Commonwealth v. Ward*, 442 Pa. 351, 353, 275 A. 2d 92 (1971) ("serious derelictions") ; *Commonwealth v. Marsh, supra*, 440 Pa. at 594 (adopting the *McMann* language explicitly).

On a careful re-reading of *McMann v. Richardson*, however, we have doubts that the above quoted phrases were intended to fix a new or higher standard. Other language in that opinion would indicate application of a standard more consonant with then existing tests for the competency of counsel. See *McMann, supra*, at 770 ("the good faith evaluations of a reasonably competent attorney") ; and at 771 ("within the range [of competence] demanded of attorneys in criminal cases"). The phrases suggesting the requirement of "gross error" and "serious derelictions" were, we think, in response to the particular facts involved in *McMann*. There it was argued that counsel who had recommended a guilty plea and who had based his opinion on the New York procedure prior to *Jackskon v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908 (1964), was incompetent. Reasonable attorneys, save in the rarest of instances, rely on the then existing law, and one who would attempt to show the existence of one of those rare instances necessarily has a difficult task.

Rather than attempt to perpetuate whatever real (rather than purely semantical) difference there may be between our Pennsylvania test for the effectiveness of counsel found in *Commonwealth ex rel. Washington v. Maroney, supra*, and the language of "gross error" and "serious dereliction" in *McMann*, we prefer to rely on the single standard of *Maroney* and the cases applying it.

[5] It does not follow, of course, that as a matter of law counsel who advises a guilty plea following an unsuccessful suppression motion can never be found to be incompetent. But where as here

Because one element of the *Marsh* three-element test is thus absent, it is not necessary to reach the further issues of whether the confession was unconstitutionally obtained and whether that confession primarily motivated the guilty pleas.

The denial of appellant's Post Conviction Hearing Act petition is therefore affirmed.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

I respectfully dissent.

## I.

In the case before us the appellant seeks to withdraw his guilty plea on the ground that it was induced by an unconstitutionally obtained confession. To justify the denial of this request the majority relies on the test formulated in *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970), and holds that the appellant failed to establish that he had been incompetently advised by counsel to enter a plea of guilty. Before the *Marsh* decision the law in this Commonwealth permitted a defendant who had entered a plea of guilty at trial to successfully collaterally challenge an alleged coerced confession provided he could establish that his confession was in fact unconstitutionally obtained and that it was the primary motivation for the entry of the plea. *See, e.g., Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968); *Commonwealth v. Garrett*, 425 Pa. 594, 229 A. 2d 922 (1967).

In my view, the additional requirement now imposed under *Marsh* effectively prevents a defendant

---

the success of the motion turned on questions of fact, and the Commonwealth did adduce evidence to support a finding adverse to the defendant, counsel's decision to advise a guilty plea, other factors excluded, cannot be faulted.

from challenging a coerced confession in a collateral proceeding where a plea was entered at trial. Even though the record may clearly establish that the confession was obtained in violation of constitutional mandates and did primarily motivate the guilty plea, remedy will be denied, as in the case at bar, because of the defendant's inability to establish that the advice to enter the plea was in fact incompetent. In *Marsh,* this Court held that before an attorney's advice will be deemed incompetent "[t]here must be a showing of gross error on the part of counsel. As long as the advice rendered was within the ambit of that which could reasonably be given by counsel in a criminal case in the circumstances, there is no showing of 'incompetent' counsel." 440 Pa. at 593-94, 271 A. 2d at 483. Similarly, in *Commonwealth v. Ward,* 442 Pa. 351, 275 A. 2d 92 (1971), we stated that in this situation a defendant "must also prove 'serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.' *McMann v. Richardson,* 397 U.S. 759, 774, 25 L. Ed. 2d 763 (1970)." 442 Pa. at 353, 275 A. 2d at 94 (citations omitted). Under such formulations, where there has been a pre-trial determination of the admissibility of the disputed confession adverse to the defendant, it is impossible to establish that the advice to enter a plea is incompetent except perhaps in the rare instances where the suppression ruling is patently erroneous. In the normal situation, where there is some basis for the ruling and the confession is damaging (as is usually the case), there is then a reasonable basis for an attorney to suggest the entry of a guilty plea.

The *Marsh* requirement is entirely inconsistent with present attempts to expedite the disposition of criminal cases and compounds our present problem of congested court calendars. We are forcing attorneys who

are faced with a confession that will surely result in a conviction to elect to unnecessarily proceed to trial solely for the purpose of preserving their objection to the suppression ruling. To force counsel to deliberately consume court time to protect the rights of his client is inexcusable in a day when the greatest crisis facing our court system is congestion.[1]

I believe that the *Marsh* Court's reliance upon *McMann v. Richardson*, 397 U.S. 759 (1970), and *Parker v. North Carolina*, 397 U.S. 790 (1970),[2] was misplaced. In *Marsh*, this Court concluded that *McMann* applies to all cases where an individual attempts to vacate a guilty plea because it was induced by an allegedly unconstitutional confession. However, the holding in *McMann* is much more limited than that ascribed to it by the *Marsh* Court. *McMann* applies only to the situation where an individual, after choosing not to assert his coerced confession claim in the state

---

[1] In his annual state of the federal judiciary message, Chief Justice BURGER discussed the various problems of the entire judicial system and pointed out that we are confronted with an unprecedented explosion of litigation. He noted that "[a]t every level, the number of cases filed and the number tried and disposed of have undergone an explosive increase in the past ten years. Ten years ago the United States district courts had 92,000 cases filed, and this year they had 145,000. Ten years ago the United States courts of appeals had 4,200 appeals filed, and this year they had more than 14,500. Ten years ago the Supreme Court had 2,400 cases docketed, and this year it had more than 4,500." The State of the Federal Judiciary—1972, 58 A.B.A.J. 1049 (1972). The state court systems are similarly over-burdened and must also resolve the problem of expanded trial calendars. While it is understandable that on occasions we have elongated procedures to assure fairness and accuracy in the fact-finding procedure, there is nothing to condone further encumbrances in the system when they are designed to restrict rights.

[2] The *McMann* rationale was reaffirmed by the Supreme Court in *Parker v. North Carolina, supra*, 397 U.S. at 796-98.

system, raises his constitutional objections for the first time in a collateral proceeding before the Federal courts.

The Supreme Court was concerned about individuals who purposely accept the advantages of pleading guilty in state courts preferring to pursue their constitutional claims at the federal level. That court stressed that "[s]ince by hypothesis the evidence aside from the confession is weak and the defendant has no reasons of his own to plead, a guilty plea in such circumstances is nothing less than a refusal to present his federal claims to the state court in the first instance—a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his coerced—confession claim in collateral proceedings. Surely later allegations that the confession rendered his plea involuntary would appear incredible, and whether this plain bypass of state remedies was an intelligent act depends on whether he was so incompetently advised by counsel concerning the forum in which he should first present his federal claim that the Constitution will afford him another chance to plead." 397 U.S. at 768-69. While this holding might properly be analogized to a state appellate court requiring a defendant to raise his coerced confession claim at the trial level before allowing a collateral attack on a guilty plea allegedly motivated by this confession, it is fallacious to conclude, as did a majority of this Court in *Marsh,* that it may be appropriately applied where in fact the constitutionality of the questioned confession was challenged and subsequently deemed admissible in the court below prior to the entry of the plea.

In any event, notwithstanding the majority's interpretation of *McMann,* we are permitted to enlarge upon

the rights of a defendant. As the *Marsh* Court itself noted: "We recognize that we could fix more exacting standards than those enunciated in *McMann,* supra, and *Parker,* supra, for our courts to follow in determining the validity of conviction resulting from guilty pleas. . . ." 440 Pa. at 594, 271 A. 2d at 483. Accordingly, if appellant can establish that his confession was in fact unconstitutionally obtained and that it induced his plea, the plea should be invalidated without a showing of incompetent advice by counsel at least in those instances where the constitutionality of the confession had been challenged before the entry of the plea.

The majority's strict adherence to *Marsh's* broad interpretation of *McMann* makes it unlikely that many defendants in cases involving a claim of an unconstitutionally obtained confession will be willing to enter a plea of guilty. In my view, by requiring a showing that the plea was entered on incompetent advice of counsel, we are substantially impairing one of the most valuable procedures utilized in our criminal justice system. Certainly, we are not encouraging the entry of guilty pleas. The inherent value of such pleas was recently recognized in *Santobello v. New York,* 404 U.S. 257 (1971), when the Supreme Court, commenting on the desirability of properly administered plea discussions, noted that "[i]f every criminal charge were subjected to a full-scale trial, the States and Federal Government would need to multiply by many times the number of judges and court facilities." 404 U.S. at 260.

I would, therefore, overrule the *Marsh* decision insofar as it pertains to cases where the constitutionality of a confession has previously been challenged and ruled admissible.

## II.

I am also compelled to reject any language contained in the majority opinion which infers that appellant, a fifteen-year-old youth not represented by counsel, voluntarily agreed to waive his constitutional right to counsel. I believe that as a matter of law a fifteen-year-old should not be considered to have the capacity to make a knowing and intelligent waiver of his *Miranda* rights without the benefit of adult guidance. Such guidance is necessary in order that the youth may fully appreciate the gravity of his situation. As the United States Supreme Court has noted in *Gallegos v. Colorado,* 370 U.S. 49 (1962), where it determined that a fourteen-year-old boy's confession was not constitutionally permissible: "He cannot be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions. He would have no way of knowing what the consequences of his confession were without advice as to his rights—from someone concerned with securing him those rights—and without the aid of more mature judgment as to the steps he should take in the predicament in which he found himself. A lawyer or an adult relative or friend could have given the petitioner the protection which his own immaturity could not. Adult advice would have put him on a less unequal footing with his interrogators. Without some adult protection against his inequality, a 14-year-old boy would not be able to know, let alone assert, such constitutional rights as he had." 370 U.S. at 54. Although the Supreme Court did not establish a *per se* rule of incapacity to waive constitutional rights based solely on age, I believe that this language suggests compelling reasons which dictate the adoption of such a rule.

Even under the "totality of circumstances" approach of *Commonwealth v. Darden,* 441 Pa. 41, 271 A. 2d 257 (1970), I do not believe that the record of this case justifies a finding that the appellant executed an intelligent and understanding waiver of his constitutional rights. An evaluation of the age, maturity and intelligence of the appellant mandates the conclusion that he did not possess the capacity to accomplish an effective waiver. In fact, psychological testing established that he was a borderline mental defective functioning at about the level of an eleven-year-old.

The record further reveals that the police knew the age of appellant and that he could barely read. Nevertheless, they persisted in questioning him and confined him overnight without informing him of his right to communicate with his mother or grandfather. In addition, the police matron testified that the appellant was frightened and did not understand the consequences of his arrest. She also stated that he burst into tears when she tried to console him. It is totally inconceivable that this appellant, without the aid of adult advice, could comprehend the magnitude of his situation, the far-reaching effect of any statement made by him during custodial interrogation, and the full significance of his right against self-incrimination.

For the reasons stated, I would reverse the court below, allow the withdrawal of the plea of guilty, suppress the confession, and remand the matter for a trial.

Mr. Justice ROBERTS and Mr. Justice MANDERINO join in this dissenting opinion.