Robert H. RUNGE, Appellant,

v.

UNITED STATES of America, Appellee.

Robert H. RUNGE, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 121–68, 167–69.

United States Court of Appeals, Tenth Circuit.

May 26, 1970.

**123**

H. C. Cooper, Oklahoma City, Okl. (Stephen K. Lester, Wichita, Kan., on the brief) for appellant.

Richard E. Oxandale, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief) for appellee.

Before LEWIS, Chief Judge, HILL, Circuit Judge, and LANGLEY, District Judge.

HILL, Circuit Judge.

In this consolidated case, appellant seeks reversal of two judgments which denied motions to vacate under 28 U.S. C. § 2255. The central issue before this court now is whether appellant's plea of guilty was coerced because of the possibility of a jury-imposed death penalty under the Federal Kidnapping Act, 18 U.S.C. § 1201(a).

The settled rule is that a plea of guilty is void and subject to a § 2255 collateral attack when threats or promises divest it of the character of a voluntary act.[1] When a coerced plea is the issue, all matters bearing on that allegation must be considered.[2] When a case is in this posture, § 2255 requires a hearing on the issue unless the files, records, motions and transcripts conclusively show that appellant's plea was voluntary; free from threat, promise or other coercion.[3]

Numerous incidents, beginning with the plea and continuing through the second § 2255 motion, impress upon this Court the conclusion that the plea of April 9, 1962, was not in fact coerced by the threat of a jury-imposed death sentence; rather, we believe the coercion argument to be but a belated afterthought.

At arraignment time both Runge and his codefendant were represented by able court appointed counsel who advised each defendant to enter a plea of not guilty. Several days later, however, each defendant withdrew his former plea and pled guilty as charged under the Kidnapping and Dyer Acts. In the course of accepting appellant's plea, it is apparent from the record that full compliance was had with Rule 11, F.R. Crim.P., 18 U.S.C.A.[4] Furthermore, it

1. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Crow v. United States, 397 F.2d 284 (10th Cir. 1968); Howell v. United States, 355 F.2d 173 (10th Cir. 1966); Putnam v. United States, 337 F.2d 313 (10th Cir. 1964).

2. Brady v. United States, 404 F.2d 601 (10th Cir. 1968), aff'd 396 U.S. 809, 90 S.Ct. 86, 24 L.Ed.2d 63 (1970).

3. Crow v. United States, 397 F.2d at 285; Howell v. United States, 355 F.2d at 174; Putnam v. United States, 337 F.2d at 315.

4. "THE COURT: Of course, it should be entirely clear that the defendants understand their rights and that no action by the Court, by the United States attorney or counsel for defendant or by anyone, has induced them to change their position. The defendants should realize that they have the right to trial by jury and that only they can waive that right. It is entirely up to the defendants whether they desire to enter pleas of guilty to one or more counts of the indictment.

Now, the United States attorney and counsel for the defendants had mentioned to the Court the possibility that the defendants might desire to enter a plea of guilty. The charge in this case on Count 1 is a serious charge, of course, and the penalty upon conviction can be death if the verdict of the jury shall so recommend, or by imprisonment for any term of years or for life if the death penalty is not imposed.

Now, the practical effect of that is this: That the penalty of death can be imposed only by recommendation of the jury which returns a verdict of guilty if they should find the defendants or either

of them guilty. The Court could, of course, even on a plea of guilty, impanel a jury to determine the penalty only, and I am not going to make any statement here that might possibly be construed as any inducement to these defendants to enter a plea of guilty.

I did receive a letter from Miss Smalley indicating that she did not desire that the death penalty be inflicted. I received also a letter from Miss Smalley's father to the same effect, and my own view is that under these circumstances, if a plea of guilty is entered, that the Court would not be justified in impaneling a jury to determine the penalty, but I certainly want these defendants to understand before any further action is taken, I want to hear from them, themselves, that they do understand this situation.

Of course, it is up to them whether they withdraw their plea of not guilty or not and enter a plea of guilty, but it must be crystal clear in the record and in the minds of all of us and in the minds particularly of these defendants, that no promise is held forth to them and that they themselves take the action voluntarily and with full knowledge of the situation.

\* \* \* \* \*

MR. HARDING: If Your Honor please, with respect to Robert Henry Runge, at this time the defendant would like leave of Court to withdraw the plea of not guilty to the several counts of the indictment entered on March 5, 1962, and to change those pleas at this time.

Prior to that, I would like to state for the record and for Your Honor and make a few comments in the form of questions to Mr. Runge.

Since I have been appointed to represent you in this matter, Mr. Runge, have you and I had the opportunity on several occasions to discuss the charges in the indictment and your wishes and desires with respect thereto?

DEFENDANT RUNGE: Yes, sir.

MR. HARDING: And we have gone over those matters on several occasions at some length, have we not?

DEFENDANT RUNGE: Yes, sir.

MR. HARDING: And on Wednesday of last week in the presence of your mother, Mrs. Muller, did we discuss the mater of the plea to this indictment or change in the plea to the counts of the indictment, for a period of about two hours?

DEFENDANT RUNGE: Yes, sir.

MR. HARDING: And as a result of our discussion of this matter, do you feel that you were fully informed by me of your several constitutional rights and the things that I, as your attorney, did recommend to you with respect to this matter?

DEFENDANT RUNGE: Yes, sir.

MR. HARDING: Were any promises or extenuating circumstances of any kind indicated by me in connection with this matter, as either might be coming from the district attorney or from His Honor?

DEFENDANT RUNGE: No, sir.

MR. HARDING: And that if a plea of guilty were entered and made by you to any of the counts of the indictment, it would have to be based solely upon the information which I presented to you as your attorney and your own judgment and decision in the matter?

DEFENDANT RUNGE: Yes, sir.

MR. HARDING: Now, you have heard here Judge Stanley's explanation of the receipt of the letters from Miss Smalley and her parents?

DEFENDANT RUNGE: Yes, sir.

MR. HARDING: The statements that His Honor has made in connection with that aspect of the matter. At this time you are asking the Court for leave to withdraw the pleas of not guilty to the three counts of the indictment and, as I understand it, you are now ready to enter a plea of guilty of your own free will without any coercion or any inducement whatever, to Counts 1 and 2 of the indictment, is that correct, sir?

DEFENDANT RUNGE: Yes, sir.

THE COURT: Counts 1 and 2?

MR. HARDING: I mean 1 and 3, Your Honor, of the indictment.

\* \* \* \* \*

THE COURT: Mr. Runge, I think that Mr. Harding has covered very fully the questions that I would have asked you, but I want it to be very clear in the record here that you understand that if you should withdraw your plea of not guilty to Counts 1 and 3 of the indictment and enter a plea of guilty to those counts, that you understand that by so doing you admit the facts alleged in these counts, waive your right to trial on the charge in each count and subject yourself to punishment within the limits fixed by law.

DEFENDANT RUNGE: Yes, sir.

THE COURT: And you do understand, do you, that the punishment prescribed for the offense charged in Count 1 of the indictment, that is, the kidnapping charge, that the punishment for that charge could be imprisonment for any term of years or for life?

DEFENDANT RUNGE: Yes, sir.

THE COURT: And with all that un-

is implicit in those proceedings that the court was satisfied that Runge was not encouraged to plead guilty because of the alleged threat inherent in a jury trial.

On April 11, 1968, appellant filed his first § 2255 motion, seeking relief on numerous grounds, including violations of Rules 5(a), (b), (c), 7, 9, 10, 21(b), 40(b), F.R.Crim.P.; violations of the 5th, 6th and 7th Amendments, U.S. Constitution; and violations of 18 U.S.C. § 3238. Nowhere in that motion is there any mention of a coerced plea. In fact, not until the sentencing court's Memorandum and Order of April 18,[5] did the question of a coerced plea and the case of United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), arise. In that memorandum the court said it wished to be "fully advised as to all of the circumstances surrounding petitioner's plea and sentence * * * [so it could] determine the impact on that sentence of the decision of the Supreme Court of the United States in the case of United States v. Jackson * * *." The first time an allegation of coercion arose in behalf of appellant was in the June 4 Traverse written by Runge's attorney in response to the District Attorney's Answer to the rule to show cause. Not until June 14, 1968, in a letter to Mr. Hackler, did appellant manifest a desire to use the new argument. Runge wrote: " * * * Seeing as the Court saw fit to bring the Jackson v. United States, case in to my Motion. We would be quite foolish not to look into it, and it is my belief that I would qualify under the decision given by the Supreme Court."

In an attempt to determine the necessity of an evidentiary hearing, a pretrial conference was held on July 10, 1968. Other than Runge's own assertion that he was coerced into a guilty plea, there is no indication that the plea was made other than voluntarily. In fact, the record of the proceedings commands a contrary conclusion:

"MR. HACKLER (Runge's Attorney): If the Court please, as I understand our hearing this morning, we are to determine the necessity of a hearing and, as I read the cases on this matter, this boils down to a question of fact, whether there is a factual issue involved —or factual issues, involved that need to be presented to the Court. I have made some independent inquiry and investigation outside of the Court's records. If I were to present—if we were to have a hearing, anything more than the affidavit on file in the record by Mr. Runge based on his statement that the—that he entered a plea to avoid the death penalty and to that extent the plea was involuntary and the other issues raised regarding how he came to be in the jurisdiction, I would not be able to present any other factual matters.

derstanding and as a matter of your own choice, freely made, is it your desire to withdraw the plea of not guilty to Counts 1 and 3 and to enter a plea of guilty to those counts?
DEFENDANT RUNGE: Yes, sir.
* * * * *
THE COURT: Mr. Runge, I'll ask you, do you feel that your counsel, you originally had two, Mr. Smith was with you in this initially, was he not? Mr. Harding?
MR. HARDING: That is right, Your Honor.
THE COURT: Mr. Smith was relieved when he was appointed to office. Do you feel that Mr. Harding and Mr.

Smith while he was so acting, have served your best interests throughout in this case?
DEFENDANT RUNGE: Yes, sir.
THE COURT: And do you feel that they have both served you capably and honestly and as you would want to be served under the circumstances?
DEFENDANT RUNGE: Yes, sir."

5. This Order granted leave for Runge to proceed in forma pauperis; appointed Mr. Hackler as appellant's attorney; and ordered a rule to show cause to determine "whether or not under the decision in the case of United States v. Jackson the sentence under attack was validly imposed * * *."

"I, just to review this matter, have made personal interview and telephone conversations with people involved in the prior hearing and the factual situation—on the factual situation I would not call any of those witnesses. So from that point of view, to be totally frank with the Court, I cannot present issues of fact other than is already in the record."

■ This candid revelation by Runge's attorney illustrates to our satisfaction that appellant's mere denials of that which he has previously admitted, does not raise a substantial issue of fact within the meaning of § 2255. Although an allegation of fact must ordinarily be accepted as true, it is not required where, as here, the allegation is contradicted by the files and records before the court. Putnam v. United States, 10 Cir., 337 F.2d 313 at 315. From the pre-trial conference of July 10, the court determined that a hearing was not required and entered findings of fact and conclusions of law denying the motion to vacate. In December, 1968, Runge filed a second § 2255 petition, singularly urging coercion in his guilty plea. This motion was denied on the grounds that it presented an issue identical to one on appeal under the initial § 2255 appeal. Both denials are appealed.

■ In order to be a beneficiary under the *Jackson* case, appellant reads it to say that prior to that decision, all who pled guilty while under a Federal Kidnapping Act charge, were, as a matter of law, coerced. That interpretation cannot fairly be attributed to that opinion,[6] as we recognized in Brady v. United States, 404 F.2d 601. Rather, the coercive nature of the Act must be considered as but one element in a search to determine voluntariness.

■ Runge, just as Brady, seizes upon the language of *Jackson* stating that since the "inevitable effect" of the death penalty provision of § 1201(a) was to needlessly encourage guilty pleas and jury trial waivers, all such pleas and waivers are *ipso facto* coerced when the fear of death is shown to be a factor in the plea. Our rejection of that interpretation of *Jackson* has been affirmed in Brady v. United States, 396 U.S. 809, 90 S.Ct. 86, 24 L.Ed.2d 63 (1970). *Jackson* did not hold § 1201(a) inherently coercive of guilty pleas; neither did it rule that all guilty pleas encouraged by fear of a possible death sentence are involuntary; nor did it hold that guilty pleas, so encouraged, are *per se* invalid. If a plea is "voluntarily" and "intelligently" made, it is valid. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). *See* Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); and McMann v. Richardson, 397 U.S. 759, 90 S. Ct. 1441, 25 L.Ed.2d 763 (1970).

■ The voluntary character of Runge's plea must be resolved by considering all relevant circumstances surrounding it. Initially, as *Brady* decided, the fact that Runge may have withheld his guilty plea if there had been no death penalty provision in § 1201(a) is not absolute proof of coercion. There is no claim of impropriety on the part of law officers, the court or his counsel. And there is a total lack of evidence that Runge was "so gripped by fear of the death penalty or hope of leniency that he did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages

6. United States v. Jackson, 390 U.S. at 583, 88 S.Ct. at 1217. The Court elaborated in note 25: "So, too, in Griffin v. State of California, 380 U.S. 609, 85 S. Ct. 1229, 14 L.Ed.2d 106 the Court held that comment on a defendant's failure to testify imposes an impermissible penalty on the exercise of the right to remain silent at trial. Yet it obviously does not follow that every defendant who ever testified at a pre-Griffin trial in a State where the prosecution could have commented upon his failure to do so is entitled to automatic release upon the theory that his testimony must be regarded as compelled."

of pleading guilty." Brady v. United States, 397 U.S. at 750, 90 S.Ct. at 1470. Our independent review of the record discloses no evidence of threats, misrepresentation or improper promises.[7]

The record before us likewise supports the conclusion that Runge's plea was intelligently made. Competent counsel advised him, he was made aware of the nature of the charges against him, and nothing indicated that he was incompetent or otherwise not in control of his mental faculties. It must be concluded upon the record that Runge intelligently admitted that he had kidnapped the victim and not released her unharmed.

Crow v. United States, 397 F.2d 284 (10th Cir. 1968) is a distinguishable case which does not require an evidentiary hearing in Runge's case. In Crow, § 2255 relief was denied without a hearing principally because of the comprehensive questioning of the defendant, by the court, to determine the voluntariness of his plea. There, the § 2255 motion alleged a coercive threat which purportedly caused appellant to plead guilty. The trial court simply stated it could not "accept" such a threat as coercive, thereby permitting the existence of the threat to go undenied. The case was then remanded to determine whether the alleged coercion actually existed.

After the Runge § 2255 pre-trial, the court entered findings of fact and conclusions of law which specifically state that there was an absence of any coercion. The court said, "the files, records and transcripts herein conclusively show that this petitioner was not coerced or influenced in any manner and therefore he is not entitled to the relief requested."

The difficulty of attempting to accurately disclose appellant's subjective state of mind at plea time cannot be minimized. However, it is not an impossible task, and is an undertaking which must eventually be assumed in all cases such as this.[8] If there was any evidence in the files of this case to warrant an evidentiary hearing, our decision would properly be stayed. But for us to deny such inquiry here would unnecessarily postpone it for another court. And, the straightforward disclosures of appellant's lawyer convinces this court that a remand would be repetitious of the July 10, 1968, pre-trial conference.

Our own careful review of the entire record, files, motions and transcripts leads us to the same conclusion: When Runge entered his guilty plea, he did it voluntarily, knowingly and free from any statutory, court or otherwise imposed coercion. This conclusion is conclusively reflected in the entire case, and thereby did not require the court below to conduct an evidentiary hearing.

The remaining § 2255 allegations, all of which were dependent upon the foregoing, may be disposed of summarily. A plea of guilty waives all nonjurisdictional defects. See Tyler v. United States, 361 F.2d 862 (10th Cir. 1966); Jude v. United States, 262 F.2d 117, 118 (10th Cir. 1958). Allegations of improper removal from one district to another are not grounds for § 2255 relief. See Ragavage v. United States, 272 F.2d 196, 197 (5th Cir. 1959). Allegations of illegal arrest are insufficient grounds for attack under § 2255. Moreland v. United States, 347 F.2d 376 (10th Cir. 1965). And, an allegation of illegal detention prior to arraignment is not grounds for relief under § 2255, Semet v. United States, 369 F.2d 90 (10th Cir. 1966).

The denial of each of the § 2255 motions to vacate is affirmed.

7. Shelton v. United States, 246 F.2d 571, 572, n. 2 (5th Cir. 1957) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958).

8. E. g., Howell v. United States, 355 F.2d 173 (10th Cir. 1966); Putnam v. United States, 337 F.2d 313 (10th Cir. 1964).