Commonwealth *v.* Rakus, Appellant.

Argued November 16, 1971. Before EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Peter J. Webby*, Public Defender, for appellant.

*Mary G. Cooper*, Assistant District Attorney, with her *Charles D. Lemmond, Jr.*, First Assistant District Attorney, and *Blythe H. Evans, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

On April 1, 1950, after the Commonwealth had rested its case against him for the robbery-murder of the owner of a jewelry store, appellant, Frank Rakus, pled guilty to the charge of murder generally. He was found guilty of murder in the first degree and sentenced to life imprisonment on April 19, 1950.

Appellant filed a petition for a writ of habeas corpus in 1965. It was denied on February 3, 1966, but on appeal we vacated that order and remanded the record to the court below for an evidentiary hearing to determine whether appellant's guilty plea was knowingly and voluntarily made in accordance with the precepts of *Commonwealth v. Patterson*, 432 Pa. 76, 247 A. 2d 218 (1968). *Com. ex rel. Rakus v. Maroney*, 435 Pa. 587, 257 A. 2d 250 (1969).

A hearing was held on June 5, and June 9, 1970, and after oral argument, the court found that appellant's plea of guilty was knowingly and voluntarily made. This appeal followed.

At the evidentiary hearing, the testimony indicated that appellant's trial counsel had based their trial strat-

egy on a challenge to the admissibility of appellant's statement to the police and the admissibility of the murder weapon which was found as a direct result of that statement. Appellant's statement to the police had not been made until he had been detained for a period of six days following his arrest and counsel had hoped that, on the basis of the then-recent United States Supreme Court decision in *Turner v. Pennsylvania*, 338 U.S. 62 (1949), such statement would be inadmissible at trial. They further hoped that as the product of an inadmissible statement, the gun would also be inadmissible. *Malinski v. New York*, 324 U.S. 401, 89 L. Ed. 1029 (1945).

The Commonwealth, although not formally introducing appellant's unsigned statement into evidence, did introduce the gun into evidence along with testimony of various police officers as to how appellant had led them to where the gun was hidden. The introduction of the gun, when considered along with evidence of appellant's previous threats to rob the jewelry store in question; evidence that broken watch crystals found at the scene of the crime matched the watch appellant was wearing at the time of his arrest; and evidence that another watch identified by the victim's family was found in a sewertrap in appellant's place of residence fully justified the fears on the part of appellant's trial counsel that appellant faced the likelihood of a death penalty if the case went to the jury.

Consequently, appellant's primary trial counsel, who is no longer living, began efforts to persuade appellant to plead guilty. According to the testimony of the surviving co-counsel, such efforts originally met with difficulty because appellant continued to protest his innocence. Finally, after two previous changes of mind on the part of appellant, appellant was convinced to plead guilty by his trial counsel and an old friend of appel-

lant's who could speak to appellant in Polish, appellant's native tongue.

Appellant's counsel placed him on the stand and the following took place:

"Q. Mr. Rakus, do you, at this time, desire to change your plea of Not Guilty to Guilty? A. I am not in good health and also I am not in good physical condition. Q. I asked you do you want to change your plea from Not Guilty to Guilty? A. That's right, with an explanation. Q. No explanation. Do you want to change your plea from Not Guilty to Guilty without no [sic] explanation, Guilty of Murder generally? BY THE COURT: Perhaps you ought to explain in that event the Court fixes the penalty. Q. In that event the Court fixes the penalty. A. I plead Guilty generally."

Appellant now argues that this colloquy proves that appellant's plea was not knowingly, intelligently and voluntarily entered and argues furthermore that the plea was based on the unconstitutional introduction of the murder weapon into evidence.

Where a defendant's guilty plea was entered prior to the decision in *Com. ex rel. West v. Rundle,* 428 Pa. 102, 237 A. 2d 196 (1968), as was the appellant's here, the burden rests upon him to prove that his plea was not knowingly, intelligently and voluntarily made, even in a silent record case. *Commonwealth v. Allen,* 442 Pa. 102, 275 A. 2d 105 (1971); *Commonwealth v. Martin,* 442 Pa. 41, 272 A. 2d 169 (1971).

Here, the record of the post-conviction hearing indicates that the appellant did not meet his burden. Rather, it shows that he had been advised that if he took the stand, his prior record would be introduced, and that record, the gun and the other evidence, considering the fact that this case involved a felony murder, made the threat of the death sentence a distinct possibility. The trial judge testified at the hearing that the chief

trial counsel had told him, when the plea was first discussed, that appellant was fully informed of the consequences of the plea, that he knew that the district attorney's office had recommended life imprisonment, and that he knew that the court was not bound by such recommendation.

When we consider the testimony of appellant's own witnesses that appellant was reluctant to plead guilty and only did so after much persuasion concerning the distinct possibility that he faced a death penalty if the case went to the jury, it is apparent that the court had ample reason not to believe the appellant's statement that he believed he was to get probation or a light sentence of a few months in the county jail if he agreed to plead guilty to murder generally. After all, if appellant really believed that his practical choices were between pleading guilty and getting a sentence of a few months or going to a jury and getting a possible death sentence, he would not have required so much persuasion.

As for appellant's contention that the plea was motivated by the unconstitutional introduction of the gun into evidence, in order to avoid a guilty plea allegedly based on unconstitutional evidence, an appellant must show all of the following: "(1) an involuntary pretrial confession (or presumably any other constitutionally infirm incriminating evidence) ; (2) that the guilty plea was primarily motivated by such evidence; and, (3) that defendant was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial." *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970), at page 593, quoting *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441 (1970).

We do not have to find, as the hearing court found, that the statement which appellant made to the police after six days of detention and questioning was volun-

tary in order to hold that appellant did not meet the burden which *McMann* places upon him.

In 1950, when this trial was held, the whole question of whether lengthy detention, alone, was enough to invalidate a confession for being involuntarily made had not been settled. The fact situation in *Turner v. Pennsylvania, supra,* contained more than just detention to support the finding that the confession was involuntary. In the instant case, however, although the appellant claimed that other forms of coercion were used, all of the police officers involved testified to the contrary. At the time, it was equally unclear whether the introduction of the gun which was found as the result of appellant's statement could be successfully challenged. Since these issues were new and complex, counsel must be relied upon to make the initial determination as to just what an appellate court would do on appeal. Mere error on the part of counsel, especially if this professional misjudgment is evident only through hindsight, will not suffice to permit the plea to be attacked collaterally. See *Commonwealth v. Garrett,* 425 Pa. 594, 229 A. 2d 922 (1967).

Here, we cannot say that the advice of counsel to plead guilty rather than risk the death sentence and the possibility of its affirmance on appeal was incompetently given.

Mr. Justice ROBERTS dissents.

Order affirmed.

Mr. Chief Justice BELL and Mr. Justice JONES took no part in the consideration or decision of this case.