Commonwealth, Appellant, *v.* Wayman.

80

Submitted April 25, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Peter G. Loftus,* Assistant Public Defender, for appellant.

*Paul R. Mazzoni,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 3, 1973:

On the afternoon of January 31, 1967, appellant, a 19 year old youth, after having learned from friends that he was wanted by the police, voluntarily surrendered to the Scranton Police Department. Appellant's action was motivated by the fact that he had been earlier advised that one Frank Smith, Jr., had been arrested for a series of burglaries, and had, shortly after being taken into custody, implicated appellant in the commission of these crimes. The following day (February 1, 1967) after having been detained and interrogated for over 24 hours, appellant signed a statement admitting his complicity in seven burglaries. Immediately thereafter, appellant was preliminarily arraigned.

On August 11, 1967, appellant pleaded guilty to one count of burglary (No. 20B), and was sentenced to 18 months imprisonment. On October 2, 1967, appellant proceeded to trial, before a jury, on the second burglary count (No. 7e), and was adjudged guilty. Prior to this trial, a timely filed motion to suppress the confession was denied. (At trial, this challenged confession was, over objection, introduced against appellant). Post-trial motions were denied, and appellant was sentenced to serve a term of 23 months imprisonment. On November 1, 1968, appellant pleaded guilty to the five remaining burglary charges then outstanding against him (Nos. 7a, b, c, d, and 10). Appellant was sentenced on each of these offenses to serve a term of imprisonment of one and one-half to four years, each sentence to run concurrently with those already being served.

An appeal, allowed as if timely filed, was taken to the Superior Court, which affirmed in an opinionless per curiam order, with two judges dissenting. (HOFFMAN, J., filed a dissenting opinion, joined by SPAULDING,

J.). This Court granted allocatur, and we now reverse the conviction in No. 7e, and remand for an evidentiary hearing in Nos. 7a, b, c, d, 10, and 20B.

Appellant here argues, as he did in the Superior Court, that the 24 hour "unnecessary delay" between his arrest and arraignment renders his confession, given only at the end of this period, inadmissible.[1] Pa. R.

---

[1] Although appellant did not raise this specific argument in his pretrial (1967) motion to suppress (which was based on purported violations of the standards set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966) and *Escobedo v. Illinois*, 378 U.S. 478, 84 S. Ct. 1758 (1964)), the Commonwealth has not objected to it being raised here, and we should not raise an objection sua sponte. *Commonwealth v. Page & King*, 451 Pa. 331, 334 n.3, 303 A.2d 215, 216 n.2a (1973). Indeed, had such an objection been voiced by the Commonwealth, it would have been without merit.

As *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) (deciding for the first time in this Commonwealth that all evidence obtained during an "unnecessary delay" between arrest and arraignment, except that evidence unrelated to the delay, is inadmissible), was not decided until five years *after* appellant's trial, appellant cannot be held to have waived the right to litigate that claim. As this Court made clear in *Commonwealth v. Simon*, 446 Pa. 215, 218, 285 A.2d 861, 862 (1971) (quoting from *Commonwealth v. Cheeks*, 429 Pa. 89, 239 A.2d 793 (1968) : " '[I]t would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived.' Id. at 95, 239 A.2d at 796. Cheeks and its progeny . . . established the rule that failure to raise an issue in a prior proceeding is not a waiver when the *legal principles* upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding." (footnote omitted). See also *Commonwealth v. Jefferson*, 423 Pa. 541, 546, 226 A.2d 765, 768 (1967).

Moreover, appellant's present contention is properly before this Court for the additional reason that the "ground" for relief presented here is the identical one presented to the hearing court in appellant's pretrial motion to suppress—the invalidity of the confession. Merely because appellant "advances a *new or different theory* as a basis for" relief, the ground or issue remains pre-

Crim. P. 116(a) (effective January 1, 1965, replaced by Pa. R. Crim. P. 118 (effective May 1, 1970)); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). Appellant also contends that the hearing court's erroneous refusal to suppress the confession was the primary motivation for appellant's subsequent pleas of guilty to the remaining charges.[2] Accordingly, appellant challenges the validity of these pleas. Cf. *Commonwealth v. Walters,* 431 Pa. 74, 244 A.2d 757 (1968); *Commonwealth v. Stokes,* 426 Pa. 265, 232 A.2d 193 (1967).

It is now well settled that at the time of appellant's arrest (1967), all persons "arrested with or without a warrant" were required to "be taken without unnecessary delay before the proper issuing authority for a preliminary arraignment." Pa. R. Crim. P. 116(a) (effective January 1, 1965); *Dutton,* supra. Where this mandate has gone unfulfilled by the Commonwealth, "all evidence obtained during 'unnecessary delay' *except that which . . . has no reasonable relationship to the delay whatsoever"* must be excluded.[3] *Futch,* supra

cisely the same. *Commonwealth v. Slavik,* 449 Pa. 424, 430, 297 A.2d 920, 923 (1972). Appellant here does not advance a new "ground," he merely raises an argument legally different from that raised below. As this Court held in *Slavik,* supra (quoting from *Sanders v. United States,* 373 U.S. 1, 16, 83 S. Ct. 1068, 1077 (1963)), " *'identical grounds may often be supported by different legal arguments, . . .'* " the "ground" appellant advances here, the invalidity of the confession, having been preserved below, is accordingly properly before this Court.

[2] Appellant also challenges the plea entered in No. 20B, prior to the suppression hearing court's refusal to suppress the challenged confession. Appellant alleges that this plea was also motivated primarily by the illegally obtained confession.

[3] "This Court in Futch [447 Pa. 389, 393, 290 A.2d 417, 419 (1972) (citations omitted) (emphasis added)] made it clear '. . .

at 394, 290 A.2d at 419 (emphasis added). See *Dutton,* supra; *Tingle,* supra. Our task on appeal, therefore, is to determine whether there was an "unnecessary delay," and if so, whether the evidence obtained is causally related to the delay. Our review of the instant record convinces us that both questions must be answered in the affirmative.

Here, the Commonwealth's own evidence, as well as the opinion of the trial court, indicates that appellant voluntarily surrendered himself to the Scranton police on the afternoon (approximately 3:00 P.M.) of January 31, 1967. Appellant was thereafter detained and interrogated for 24 hours, and at 3:00 P.M. on February 1, 1967, finally signed a statement admitting his complicity in seven separate burglaries. During this 24 hour period, appellant was returned to his home, in the custody of the police, where evidence (cash receipts) of one crime was obtained by the authorities.

The Commonwealth does not in any way seek to justify this delay, but rather asserts that as appellant was not "threatened" or "abused," his confession represents a knowing and voluntary, and therefore valid, act. However, this argument misses the point—Pa. R. Crim. P. 116(a) (as well as its progeny Pa. R. Crim. P. 118 and 116) requires that all arrestees be preliminarly arraigned "without unnecessary delay." The Commonwealth has made no suggestion whatsoever that the instant delay was necessary.[4] Accordingly, we must conclude that the 24 hour delay between appellant's arrest

---

that failure to comply with Rule 118 [and prior to 1970, Rule 116(a)] does not *ipso facto* render inadmissible evidence obtained by the police during the "unnecessary delay" and that it is incumbent upon defendant to show *some prejudice* from the delay.' " *Commonwealth v. Tingle,* 451 Pa. 241, 244-45, 301 A.2d 701, 702-03 (1973).

[4] Chief Justice, then Judge BURGER, provided the following guidelines for determining "necessary delay" between arrest and

and arraignment was "unnecessary," and hence violative of Rule 116(a). *Dutton,* supra; *Tingle,* supra; *Futch,* supra.

Nor can it be seriously suggested that the challenged confession was not "reasonably related" to this "unnecessary delay." *Futch,* supra at 394-96, 290 A.2d at 419. By the Commonwealth's own concession, appellant, a 19 year-old youth with no prior police contact, did not "confess" until 24 hours after arrest and repeated interrogation.[5] It was only then, after giving a written statement, that appellant was preliminarily arraigned. On these facts, "[w]e must conclude that the challenged statement here, as the evidence in Futch, supra, was 'reasonably related' to the 'unnecessary delay' and thus inadmissible." *Tingle,* supra at 247, 301 A.2d at 704.

---

arraignment: "Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps. . . ." *Adams v. United States,* 399 F.2d 574, 579 (D.C. Cir. 1968) (concurring opinion). See *Commonwealth v. Tingle,* 451 Pa. 241, 245, 301 A.2d 701, 703 (1973) ; *Commonwealth v. Futch,* 447 Pa. 389, 392, 290 A.2d 417, 418 (1972).

[5] Although obviously disbelieved by the suppression court, appellant testified that: "After they had locked me up they came back and took me out again and kept asking me questions, and kept telling me that *Frank had already confessed to certain crimes,* and they named crimes that I never heard of, and then they took me back to the cell again and brought me back when I wouldn't tell them nothing, and they said, *'We are going to make it hard on you',* and things like that, *'We are going easy on Smith'.* Then they locked me up and after they had taken me out of my cell and took me back. As they would be locked me up they would be bringing Smith back in again and bringing him out and later on coming and get me. The next day in the morning they came and got me and took me back again, and they told me they had Smith upstairs and he had signed a statement. *'So you might as well do it too, we will go easy on you, and it won't be so hard',* and things like that. And when I told them I wasn't going to they took me back and locked me up again."

Having determined appellant's confession to be invalid, and erroneously admitted at his trial, we are now called upon to pass on appellant's contention that his guilty pleas to the six remaining burglary charges were primarily motivated by the illegally obtained confession. However, the record before us is insufficient to make such a determination. Accordingly, as no post-trial motions were filed by appellant prior to this appeal allowed as if timely filed, the record is remanded to the trial court for the filing of post-trial motions, with instructions, to the trial court, to conduct an evidentiary hearing. Cf. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973); *Commonwealth v. Kelly*, 436 Pa. 21, 258 A.2d 325 (1969).

The judgment of sentence in No. 7e is reversed and a new trial granted. The records in Nos. 7a, 7b, 7c, 7d, 10, and 20B are remanded to the trial court for the filing of post-trial motions, with instructions to hold an appropriate evidentiary hearing.

Mr. Justice EAGEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

Two basic errors in today's decision compel my dissent. First, in entertaining petitioner's claim that his confession is inadmissible under *Futch* and *Dutton*, the majority departs from the rules governing issues presentable on appeals *nunc pro tunc* which we laid down in *Commonwealth v. Faison*, 437 Pa. 432, 264 A. 2d 394 (1970). Second, in holding that guilty pleas which follow an inadmissible confession will be invalidated if they were primarily motivated by the confession, the Court appears to overrule, *sub silentio*, without benefit of briefs or argument on the question, a large part of our still recent decision in *Commonwealth v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970). I believe the trial court was correct and that its judgments of sentence should be affirmed without a remand.

# I.

In *Commonwealth v. Futch*, 447 Pa. 389, 290 A. 2d 417 (1972), we promulgated a rule excluding from evidence confessions extracted during and causally related to a period of unnecessary delay prior to arraignment. Since the filing of briefs in the present case, *Futch* has been made retroactive (over my dissenting opinion joined by Chief Justice JONES and Mr. Justice EAGEN) to January 1, 1965, the effective date of former Pennsylvania Rule of Criminal Procedure 116(a). *Commonwealth v. Dutton*, 453 Pa. 547 (1973). This rule, requiring prompt arraignment of all persons arrested, was in effect at the time of appellant's arrest and confession. However, it does not follow that he may avail himself of the *Futch* exclusionary rule on this appeal *nunc pro tunc*.

In *Commonwealth v. Faison*, supra, we held that an appellant whose appeal is taken *nunc pro tunc* can raise only those issues properly preserved at trial, and those issues involving alleged deprivations of constitutional rights subsequently announced but retroactively applied. Wayman did not preserve an "unnecessary delay" issue at trial; indeed, he never once mentioned it.[1] As to the second category of issues, while it is

---

[1] Wayman's attack on his confession at the suppression hearing, at trial, and in post-trial motions, was that it was coerced by improper police conduct and in violation of the *Miranda* requirements as to warnings of his constitutional rights. The *Futch* issue was introduced for the first time in the Superior Court.

In *Commonwealth v. Slavik*, 449 Pa. 424, 297 A. 2d 920 (1972), we held that a criminal defendant whose challenge to the validity of his guilty plea had been rejected on direct appeal could not attack the plea a second time in a PCHA petition, even though he advanced a different legal theory. We there said: "A defendant is not entitled to relitigate the validity of his plea every time he offers a new theory or argument which he had not previously advanced. To hold otherwise would virtually emasculate Section 4(a) of the

true that *Futch* is a subsequently announced, retroactively applied rule, it is not a *constitutionally* based rule. Rather, it was promulgated in the exercise of our supervisory powers, paralleling the *McNabb-Mallory* rule in the federal courts.[2]

The reason that subsequently announced but retroactively applied *constitutional* rights are available on a direct appeal *nunc pro tunc* is that such issues can be made the subject of a PCHA petition, and it is inefficient to require two proceedings where one would suffice. PCHA proceedings, however, are limited to issues of constitutional dimension,[3] and *Futch* would therefore be unavailable to a PCHA petitioner.[4] It follows

---

PCHA, defeat its very objective, and permit constant and repetitive relitigation of issues already finally decided on their merits." 449 Pa. 431. To turn *Slavik* on its head, and argue from it, as the majority does in its footnote 1, supra, that if an appellant's case has *not* been litigated on appeal he may base his claim on any legal or factual theory, irrespective of whether the arguments were made at trial, is to fly in the face of reason and precedent. "It is a well known axiom that appellate courts will not review issues and arguments not raised in the court below." *Commonwealth ex rel. Bell v. Rundle*, 420 Pa. 127, 131, 216 A. 2d 57, *cert. den.*, 384 U.S. 966 (1966); see also *Commonwealth v. Commander*, 436 Pa. 532, 260 A. 2d 773 (1970); *Commonwealth v. Scoleri*, 432 Pa. 571, 248 A. 2d 295 (1968); *Commonwealth v. Payton*, 431 Pa. 105, 244 A. 2d 644 (1968). Among other considerations, to act otherwise is to deprive ourselves of the benefit of the trial court's initial judgment on the question.

In *Slavik* we said: "It is evident that the orderly administration of justice requires that a criminal controversy, like any other litigation, some day come to an end." 449 Pa. 432. The majority today seriously undermines this well considered judicial policy.

[2] *McNabb v. United States*, 318 U.S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943); *Mallory v. United States*, 354 U.S. 449, 77 S. Ct. 1356, 1 L. Ed. 2d 1479 (1957).

[3] See *Commonwealth v. Smulek*, 446 Pa. 277, 284 A. 2d 763 (1971); *Commonwealth v. Lowery*, 438 Pa. 89, 263 A. 2d 332 (1970); *Commonwealth v. Musser*, 437 Pa. 131, 262 A. 2d 678 (1970).

[4] But see *Commonwealth v. Richardson*, 433 Pa. 195, 249 A. 2d 307 (1969). In that case we reached the merits of a PCHA peti-

that it is equally unavailable to an appellant proceeding *nunc pro tunc* and who did not timely preserve the issue below. I note that the *McNabb-Mallory* rule is unavailable for precisely that reason on federal collateral attack on a federal conviction.[5]

Even were we to extend the scope of PCHA relief to "fundamental" trial errors not of constitutional dimension, appellant should not prevail, for violation of the *Futch* exclusionary rule is clearly not "fundamental" error. The *Futch* rule is prophylactic, not remedial. It is designed to ensure that in future all prisoners will be promptly arraigned after arrest. Where a confession is shown to have been coerced, the rule is superfluous. It comes into play in precisely those situations where the confession is voluntary and otherwise free from unconstitutional taint. Thus the admission at trial of a confession in all respects valid but obtained during a period of unnecessary delay detracts not a whit from the fairness of the trial proceedings. Indeed, since the deterrent function of the *Futch* rule will hardly be advanced by its application to facts occurring five years before its announcement, there is no jurisprudential purpose to be served by extending the benefit of the rule to Wayman, much less any fundamental error in admitting his confession.

---

tioner's claim under *Commonwealth v. McIntyre,* 417 Pa. 415, 208 A. 2d 257 (1965), a case decided after the final adjudication of petitioner's direct appeal. In so doing, I think we erred. Although the *Richardson* opinion treats the *McIntyre* issue as one of due process, the exclusionary rule of that case is based, like the *Futch* rule, on our supervisory powers.

[5] See, e.g., *Runge v. United States,* 427 F. 2d 122 (10th Cir. 1970) ; *Semet v. United States,* 369 F. 2d 90 (10th Cir. 1966) ; *United States v. Morin,* 265 F. 2d 241 (3d Cir. 1959) ; C. A. Wright, 1 Federal Practice and Procedure §73, at 78 (1969). On the general unavailability of non-constitutional claims on federal habeas corpus, see *Sunal v. Large,* 332 U.S. 174, 67 S. Ct. 1588, 91 L. Ed. 1982 (1947).

In sum, the necessity for judicial finality which is wisely recognized in the Post Conviction Hearing Act also applies to appeals *nunc pro tunc,* subject to the exceptions noted in *Commonwealth v. Faison,* supra. I see no justification for the Court to ignore that salutary formulation of appellate justiciability.

## II.

Even assuming that the majority is correct in reaching the merits of Wayman's *Futch* claim, he is in my judgment entitled to no relief.

The first burglary charge brought against Wayman (No. 20B) was for a crime not touched upon in his confession and at the scene of which he was apprehended redhanded. To this he pleaded guilty.[6]

The next indictments (Nos. 7A, 7B, 7C, 7D, 7E and 10) charged separate burglaries which were encompassed by the challenged confession. Wayman moved to suppress his statement and after that motion was heard and denied, pleaded not guilty at No. 7E and went to trial before a jury. He was convicted. He then pleaded guilty to the remaining five indictments (Nos. 7A through 7D, inclusive, and 10). At no time has he moved the lower court to allow withdrawal of his guilty pleas.[7]

---

[6] The opinion of the Court appears to remand to enable the lower court to determine if this plea at No. 20B, among others, was primarily motivated by the presence in the hands of the prosecutor of Wayman's confession. I am at a loss to understand how it could be that appellant pleaded guilty to *one* crime because the police had a confession relating to *other* crimes, especially in view of the fact that he was caught at the scene and thus had no defenses. It would seem obvious that the plea was solely motivated by the impossibility of contesting the matter.

[7] Withdrawal of a plea of guilty is possible for "any fair and just reason" before sentencing, *Commonwealth v. Forbes,* 450 Pa. 185, 299 A. 2d 268 (1973) (or, perhaps, for *any* reason, *Common-*

The legal issue which is now before us is easy to state: What must an appellant such as Wayman show in order to avoid guilty pleas when those pleas are alleged to be in some manner causally related to the presence in the hands of the prosecutor of illegally obtained evidence? We answered this question in *Commonwealth v. Marsh,* supra, in which we adopted the federal standards announced in the so-called *"Brady* trilogy" of the United States Supreme Court cases.[8] We said in *Marsh*: "The United States Supreme Court [in *McMann* and *Parker,* supra note 8] held that a defendant must demonstrate *all* of the following to successfully collaterally attack a plea of guilty on such grounds: (1) an involuntary pretrial confession (or presumably any other constitutionally infirm incriminating evidence); (2) that the guilty plea was primarily motivated by such evidence; and, (3) that defendant was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial. . . .

"We recognize that we could fix more exacting standards . . . for our courts to follow in determining the validity of conviction resulting from guilty pleas, and some of our previous decisions may have been so

_wealth v. Woods,_ 452 Pa. 546, 307 A. 2d 880 (1973)). After sentencing, a plea may be withdrawn to prevent the occurrence of "manifest injustice." *Commonwealth v. Starr,* 450 Pa. 485, 301 A. 2d 592 (1973). Appellant does not evoke the principle of either class of plea withdrawal case.

[8] The "trilogy" consists of the following three cases: *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 25 L. Ed. 2d 763 (1970), and *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785 (1970). Also relevant is *North Carolina v. Alford,* 400 U.S. 25, 27 L. Ed. 2d 162 (1970), in which the Supreme Court, relying on *Brady,* supra, rejected the contention that a guilty plea is invalid because primarily motivated by a desire to avoid the death penalty. The most recent Supreme Court pronouncement based on the trilogy is *Tollett v. Henderson,* 411 U.S. 258, 36 L. Ed. 2d 235, 41 U.S.L.W. 4486 (1973).

interpreted, but we intend to adhere to the rulings in McMann, supra, and Parker, supra." 440 Pa. at 593-94. This statement of the law has been consistently followed in our subsequent decisions.[9]

I note that the first two of these requirements, as recited in *Marsh*, constitutes a restatement of the pre-*Marsh* law in Pennsylvania to which the Court today reverts: a guilty plea is avoided by showing a link of "but for" causation between the illegally obtained evidence and the plea.[10] The third requirement of *Marsh*—

---

[9] *Commonwealth v. Marsh*, supra, has been followed on numerous occasions. See, e.g., *Commonwealth v. Dennis*, 451 Pa. 340, 304 A. 2d 111 (1973) ; *Commonwealth v. Taylor*, 449 Pa. 345, 296 A. 2d 823 (1972) ; *Commonwealth v. Hollenbaugh*, 449 Pa. 6, 295 A. 2d 78 (1972) ; *Commonwealth v. Yuknavich*, 448 Pa. 502, 295 A. 2d 290 (1972) ; *Commonwealth v. Lofton*, 448 Pa. 184, 292 A. 2d 327 (1972) ; *Commonwealth v. LaCourt*, 448 Pa. 86, 292 A. 2d 377 (1972) ; *Commonwealth v. Reagen*, 447 Pa. 186, 290 A. 2d 241 (1972) ; *Commonwealth v. White*, 446 Pa. 378, 288 A. 2d 759 (1972) ; *Commonwealth v. Rakus*, 445 Pa. 509, 285 A. 2d 98 (1971) ; *Commonwealth v. Moroz*, 444 Pa. 493, 281 A. 2d 842 (1971) ; *Commonwealth v. Myers*, 444 Pa. 465, 282 A. 2d 347 (1971) ; *Commonwealth v. Lewis*, 443 Pa. 305, 279 A. 2d 26 (1971) ; *Commonwealth v. Brown*, 443 Pa. 21, 275 A. 2d 332 (1971) ; *Commonwealth v. Lundy*, 443 Pa. 8, 275 A. 2d 101 (1971) ; *Commonwealth v. Ward*, 442 Pa. 351, 275 A. 2d 92 (1971) ; *Commonwealth v. Henderson*, 441 Pa. 255, 272 A. 2d 182 (1971) ; *Commonwealth v. Rogers*, 440 Pa. 598, 269 A. 2d 449 (1970). All of these decisions are invalidated to some extent by the action the Court takes today in the case at bar.

[10] The "but for" cases in Pennsylvania prior to *Marsh* were *Commonwealth v. Baity*, 428 Pa. 306, 237 A. 2d 172 (1968) ; *Commonwealth v. Garrett*, 425 Pa. 594, 229 A. 2d 922 (1967).

As a test of voluntariness, this standard is if anything more generous to defendants who have pleaded guilty than is federal constitutional law. In *Brady*, supra, the defendant alleged that his guilty plea was induced by an unconstitutional statutory provision under which only a jury could impose the death penalty. The Court replied:

". . . [E]ven if we assume that Brady would not have pleaded guilty except for the death penalty provision . . ., this assumption

that the plea shall have been entered on incompetent advice of counsel—was adopted from *McMann v. Richardson,* the trilogy case in which the role of counsel is most fully explicated. It should be noted, however, that the requirement appears in *Brady* and *Parker* as well, and that *Marsh* is in fact supported not only by *McMann* but by the principles of all three cases. This last requirement is completely overlooked by the majority.

I for one believe that a guilty plea, not withdrawn before sentencing, entered in accordance with the rules and decisions regarding guilty pleas,[11] and competently

---

merely identifies the penalty provision as a 'but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act. . . . The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge TUTTLE of the Court of Appeals for the Fifth Circuit:

" '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes).' 242 F. 2d at page 115." 397 U.S. at 750, 755, 25 L. Ed. 2d at 757, 760.

In the present case, the record shows Wayman being informed of all procedural rights (of which he, incidentally, was already aware, having just been convicted in a jury trial of one count of burglary); it shows him acknowledging, after detailed questioning by the Court, that he committed all the several burglaries charged, and finally, it shows Wayman telling the Court that he "just want(s) to get it over with." I think it clear that, judged apart from the performance of counsel, Wayman's guilty pleas satisfied the minimum federal constitutional standard of voluntariness set out in *Brady.*

[11] *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274 (1969), requires that the record made at the time of acceptance of a guilty plea affirmatively disclose that the plea is the voluntary and in-

advised by counsel should be in practical effect final. I recognize, of course, that this Court has an independent power to depart from the federal constitutional law as announced by the Supreme Court of the United States and to require procedures more favorable to the defendant as a matter of state law. When as here that Court has dealt with the subject extensively, I think this Court owes it to its constituency to explain why a different rule should obtain in Pennsylvania. That obligation is not discharged by the conclusory discussion of today's opinion.

---

telligent act of the defendant. This Court in *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A. 2d 196 (1968), imposed the same requirement on the lower courts of this State at an earlier date. Our rule of procedure, Pa. R. Crim. P. 319, as amended on March 28, 1973, charges Pennsylvania judges not to accept a guilty plea "unless [the court] determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered." The commentary to that Rule lists minimum inquiries to be made and information to be given the defendant. In addition, we have obliged trial courts to ascertain that there exists a factual basis for the plea. See *Commonwealth v. Jackson*, 450 Pa. 417, 299 A. 2d 209 (1973). And finally our trial courts are positively barred from accepting pleas from defendants who are unable to say that they committed the acts with which they stand charged. See, e.g., *Commonwealth v. Roundtree*, 440 Pa. 199, 269 A. 2d 709 (1970); *Commonwealth v. Cottrell*, 433 Pa. 177, 249 A. 2d 294 (1969).

As the Supreme Court said in *Brady*, "[we] would have doubts about this case if [plea bargaining] increased the likelihood that defendants, advised by competent counsel, would falsely condemn themselves. But our view is to the contrary and is based on our expectations that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendant's admissions that they committed the crimes with which they are charged." 397 U.S. at 758, 25 L. Ed. 2d at 762.

Under this standard and as it is applied in Pennsylvania, it is, as a practical matter, difficult to have a guilty plea accepted where the defendant is not in fact guilty.

## III.

Examining Wayman's guilty pleas in the light of *Marsh*, we can dispose of this case without a remand. The record before us is adequate to resolve the only question which we need to reach: whether or not "defendant was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial." *Commonwealth v. Marsh*, supra, 440 Pa. at 593.

Wayman's attorney moved to suppress the confession on the only arguable ground then open to him: failure to give *Miranda* warnings. He cannot be faulted for not raising the *Futch* issue; attorneys do not act incompetently merely because they fail to foresee a change in the law five years in the offing. Having presented a suppression motion on his client's behalf which turned on factual issues (whether *Miranda* warnings had been given), and having seen those factual issues resolved adversely to his client on the strength of substantial evidence, Wayman's attorney was acting reasonably in suggesting a guilty plea. *Commonwealth v. Taylor*, 449 Pa. 345, 296 A. 2d 823 (1972). I would affirm all of appellant Wayman's judgments of sentence.

Mr. Chief Justice JONES joins in this dissenting opinion.