LAWRENCE H. HELLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MADELINE D. HELLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Heller v. Commissioner
Docket Nos. 14952-92, 15081-92
United States Tax Court
T.C. Memo 1994-463; 1994 Tax Ct. Memo LEXIS 468; 68 T.C.M. (CCH) 730; September 19, 1994, Filed *468 Decision will be entered under Rule 155. For petitioner in docket No. 14952-92: Roger B. Coven. For petitioner in docket No. 15081-92: Gordon B. Cutler. For respondent: Robin F. Kaufer. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of a statutory notice of deficiency, determined income tax deficiencies and additions to tax for petitioner Lawrence H. Heller (Mr. Heller) as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6661 1984
$ 43,373
[1] $ 2,169
$ 10,843
1985
29,073
[1] 1,454
7,268
1986
15,941
[1] 797
3,985
Respondent, also by means of a statutory notice of deficiency, determined income tax deficiencies and additions to tax for petitioner Madeline D. Heller (Ms. Heller) as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6661
1984
$ 20,080
[1] $ 1,004
$ 5,020
1985
16,693
[1] 835
4,173
1986
3,585
[1] 179
-- All *469 section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions by the parties, the issues for consideration are: (1) Whether $ 23,500 Mr. Heller received from his employer in 1984 was a loan or compensation; (2) whether amounts Mr. Heller paid Ms. Heller in 1986 were alimony; and (3) whether petitioners are liable for additions to tax under sections 6653(a) and 6661. [1] We also must rule on respondent's motion to strike portions of Mr. Heller's reply brief pursuant to Rule 52. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and attached exhibits are incorporated *470 by this reference. At the time of filing the petitions, both petitioners resided in Santa Monica, California. Mr. Heller and Ms. Heller were married on December 26, 1971. They have two children, both of whom were minors during the years in issue. On June 22, 1985, Mr. Heller and Ms. Heller legally separated. After the separation, the children resided with Ms. Heller, and Mr. Heller had visitation rights. For all the years in issue, Mr. Heller's filing status was married filing separate return. For the 1984 taxable year, Ms. Heller's filing status was married filing separate return. For 1985 and 1986, Ms. Heller filed as a head of household. Mr. Heller was a tax attorney during the years in issue. He has a law degree specializing in tax law and was a certified tax specialist practicing in California. For 1984, total community income was $ 93,538, which was allocable $ 46,769 to each spouse. Total community deductions for 1984 were $ 18,206, which was allocable $ 9,103 to each spouse. On Mr. Heller's 1984 Federal income tax return, he reported adjusted gross income of $ 45,793 and itemized deductions of $ 16,676. Ms. Heller, on her 1984 Federal income tax return, reported *471 no income and no itemized deductions. Mr. Heller and Ms. Heller were separated on June 22, 1985. All income earned and expenses paid from the beginning of 1985 until and including that date was community income or expense. For the community period, total community income was $ 55,580, which was allocable $ 27,790 to each spouse. Total community expenses were $ 3,928, allocable $ 1,964 to each petitioner. Mr. Heller's separate income for 1985, earned after June 22, 1985, was $ 57,000, and his separate deductions were $ 2,700. Ms. Heller's separate income for 1985, earned after June 22, 1985, was $ 380. Mr. Heller, on his 1985 Federal income tax return, reported adjusted gross income of $ 80,162 and itemized deductions of $ 19,407. Mr. Heller also claimed dependency exemptions for both of their minor children. Ms. Heller, for her 1985 taxable year, reported adjusted gross income of $ 759 and no itemized deductions. For his 1986 taxable year, Mr. Heller again claimed dependency exemptions for both their minor children. Bonus Income -- During 1984 through 1986, Mr. Heller was employed by Weinberg, Zipser, Arbiter and Heller, Inc. During 1984, Mr. Heller received salary *472 from his employer of $ 53,970 and additional income of $ 39,363. Also in 1984, Mr. Heller received additional amounts adding up to $ 23,500 from his employer. These amounts were originally characterized as loans by his employer, but were later reclassified as compensation or forgiven. Mr. Heller's employer's ledger sheet for 1984 indicated that Mr. Heller received bonus income of $ 13,500 and $ 10,000 in January and March, respectively. Payments Pursuant to Court Orders -- Pursuant to an order of the California Superior Court for the County of Los Angeles dated February 19, 1986 (the temporary order), Mr. Heller was required to make monthly payments to Ms. Heller until such time as a hearing and further court order on the issue of spousal and child support could be entered. The payment obligations under the temporary order were not designated and totaled $ 16,300 for the period from February 1986 through June 1986. On August 8, 1986, subsequent to the above-referenced hearing, a court order was issued under which Mr. Heller's payment obligations to Ms. Heller for the period July 1986 through December 1986 were continued from the earlier payments and specifically designated *473 $ 6,000 child support ($ 1,000 per month) and $ 7,200 spousal support ($ 1,300 per month for July through September, $ 1,100 per month for October through December, and reducing further to $ 800 per month after December 31, 1986). Mr. Heller paid Ms. Heller a total of $ 29,100 pursuant to the 1986 court orders. No references to the couple's property interests or rights are made in either the temporary order or the August 1986 order; however, an order of the California Superior Court dated December 17, 1987, allocates specific items of property and, further, requires Mr. Heller to pay Ms. Heller $ 25,000 to equalize the division of the couple's community property. The December 1987 order also indicates that Mr. Heller is to continue making monthly child and spousal support payments to Ms. Heller of $ 1,000 and $ 1,700, respectively. Mr. Heller and Ms. Heller were both represented by counsel pursuant to their divorce. The February order was the first order entered in the marriage dissolution case requiring Mr. Heller to pay money to Ms. Heller. In preparation for the order, Ms. Heller outlined her necessary household expenses. At the time the order was entered, Ms. Heller did *474 not give up any of her community property rights, and it was her understanding that the money was for support and not a property division. OPINION First we will consider respondent's motion to strike portions of Mr. Heller's reply brief. Rule 52 allows this Court to strike any redundant, immaterial, impertinent, frivolous, or scandalous matter from any pleading and any objectionable matter from briefs filed with the Court. After careful consideration of respondent's motion and Mr. Heller's reply brief, we do not find that the portions of Mr. Heller's reply brief that respondent moves to strike are of the type contemplated by Rule 52. Therefore, respondent's motion is denied. Bonus Income -- Under section 61, gross income means all income from whatever source derived, including compensation for services and income from discharge of indebtedness. Sec. 61(a)(1), (12). Respondent argues that, pursuant to section 61, the $ 23,500 Mr. Heller received from his employer in 1984 should have been included as gross income. Mr. Heller argues that the $ 23,500 was a loan and it was correctly excluded from gross income. Whether a bona fide debtor-creditor relationship exists is a *475 question of fact. Fisher v. Commissioner, 54 T.C. 905, 909 (1970). Petitioner bears the burden of proof. Rule 142(a). As part of his burden, Mr. Heller must show that he and his employer intended to create a debtor-creditor relationship and that a debt in fact existed. Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. 205 F.2d 343 (2d Cir. 1953). An essential inquiry is whether the recipient of the funds has a good-faith intent to make repayment and whether the payor of the funds has a good-faith intent to enforce repayment. Fisher v. Commissioner, supra.
We know that the payments were at one time characterized as a loan, but we also know that they were later reclassified. To meet his burden of proof, Mr. Heller only presented his own self-serving testimony. Mr. Heller did not present a note or any written loan agreement, a repayment schedule, any evidence that any amount had been repaid, or any evidence that any demand for repayment had been made. See Sattelmaier v. Commissioner, T.C. Memo. 1991-597. Therefore, no *476 independent or corroborating evidence was presented that a debtor-creditor relationship existed between Mr. Heller and his employer, or that a debt existed as of the end of 1984. We find that Mr. Heller has failed to show that the $ 23,500 received from his employer in 1984 was not gross income as determined by respondent. Therefore, the amounts received should be included in gross income. Sec. 61. The income is community income allocable $ 11,750 to each petitioner. Payments Pursuant to Court Orders -- Section 71(a) includes in gross income amounts received as alimony or separate maintenance payments. Section 71(a) does not apply to any payment that is for the support of children of the payor spouse. Sec. 71(c). Section 215 allows a deduction for alimony or separate maintenance payments paid during the taxable year. Section 71(b)(1) [2] defines alimony or separate maintenance as any cash payment meeting the four criteria provided in subparagraphs (A) through (D) of that section. Accordingly, if any portion of the $ 29,100 paid to Ms. Heller meets the four enumerated criteria, that portion is alimony. *477 The first criterion is that the payment must be made pursuant to a divorce or separation instrument. Sec. 71(b)(1)(A). Support and maintenance payments made to a spouse pursuant to a court decree satisfy this criterion. Sec. 71(b)(2)(C). In the present case, the payments to Ms. Heller during 1986 were made pursuant to two court orders -- the temporary order, which established Mr. Heller's payment obligations for the period from February through June 1986, and the August order, which established Mr. Heller's payment obligations for the remainder of 1986. Ms. Heller argues that the temporary order is not a divorce or separation instrument within the meaning of section 71(b)(2)(C) because the payment obligations established therein were undesignated, and, therefore not "for the support or maintenance of the other spouse." We disagree. When taken together, we think the temporary and August 1986 court orders were intended to establish payment obligations in the nature of spousal and child support, and, thus, both orders are decrees of the type contemplated in section 71(b)(2)(C). Consequently, all of the payments in issue here were made pursuant to a divorce or separation instrument *478 within the meaning of section 71(b)(1)(A). The second criterion is that the divorce or separation instrument (i.e., the court orders) must not designate the payment as one that is excluded from treatment as alimony under section 71 and section 215. Sec. 71(b)(1)(B). In the present case, Mr. Heller was required to pay Ms. Heller $ 29,500; of this amount, $ 6,000 was designated child support, $ 7,200 was designated alimony, and $ 16,300 was not designated. Thus, of the $ 29,100 paid to Ms. Heller, $ 6,000 is excluded from alimony as child support, and the remaining $ 23,100 will be considered alimony if the remaining criteria are satisfied. The third criterion is that the payor spouse and the payee spouse must not be members of the same household. Sec. 71(b)(1)(C). This criterion is satisfied in the present case because petitioners resided in separate households when the payments were made. The final criterion is that the payor spouse must not be liable for any payments under the divorce or separation instrument after the death of the payee spouse. Sec. 71(b)(1)(D). [3] In the present case, the August 1986 order expressly stated that the spousal support obligations provided *479 therein were to terminate upon the death of either spouse or the remarriage of Ms. Heller. Thus, of the $ 23,100 remaining in issue, $ 7,200 (the amount designated as spousal support in the August 1986 order) clearly meets the section 71(b)(1)(D) requirement that the payment obligations terminate upon the death of the payee spouse. *480 The remaining amount in dispute is $ 15,900 ($ 23,100 less $ 7,200). This amount represents undesignated payments made to Ms. Heller pursuant to the temporary court order. No indication is given in that order as to whether these payments were to cease upon the death of Ms. Heller; thus, we must look to State law for that determination. Sampson v. Commissioner, 81 T.C. 614, 618 (1983), affd. without published opinion 829 F.2d 39 (6th Cir. 1987); Notice 87-9, 1987-1 C.B. 421, 422. Under Cal. Civ. Code section 4801(b) (1983), [4] spousal support payments are deemed not to continue beyond the death of either spouse, unless otherwise agreed by the parties. Thus, under California law, if any portion of the undesignated payments is considered spousal support, that portion would satisfy the section 71(b)(1)(D) requirement that the payment obligations terminate upon the death of the payee spouse. As noted earlier, when taken together, we think the temporary and August 1986 court orders were intended to establish payment obligations in the nature of spousal and child support. We also note that the monthly *481 child support payment was $ 1,000 under both the August 1986 order and the December 1987 order. Thus, we conclude $ 5,000 ($ 1,000 per month for 5 months) of the payment obligations established in the temporary order represents child support and $ 10,900 represents spousal support. Consequently, pursuant to Cal. Civ. Code section 4801(b) (1983), we hold that $ 10,900 of the undesignated payments made pursuant to the temporary order satisfies the section 71(b)(1)(D) requirement that the payment obligations terminate upon the death of the payee spouse. Since the four criteria enumerated in subparagraphs (A) through (D) of section 71(b)(1) have been met regarding $ 18,100 of the total amount paid by Mr. Heller to Ms. Heller, that amount is alimony within the meaning of section 71. Thus, Mr. Heller is entitled to deduct $ 18,100 as alimony paid in 1986, and a like amount is included in Ms. Heller's *482 gross income for that year. Secs. 215, 71(a). Additions to Tax -- Section 6653(a)(1) and (2) provides for an addition to tax for negligence or intentional disregard of the rules or regulations. For purposes of the statute, negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299). Respondent's determinations are presumed to be correct, and petitioners bear the burden of proof to show that respondent's determination of an addition to tax is erroneous. Rule 142(a). Mr. Heller was a practicing tax attorney and a certified tax specialist during the years in issue. Also during the years in issue, he understated his income, overstated his deductions, and claimed dependency exemptions he was not entitled to claim. Mr. Heller offered no evidence showing that respondent's determination was wrong *483 as to those items. Therefore, we hold that Mr. Heller is liable for the additions to tax under section 6653(a)(1) and (2). For the 1984 and 1985 taxable years, Ms. Heller knew that Mr. Heller was employed. The money Mr. Heller was earning was in part community property and Ms. Heller was liable to pay tax on her share of the income, and she was aware of her obligation to pay tax. However, she reported little or no income on her tax returns for those taxable years. Based on the record before us, we do not find that Ms. Heller acted reasonably when she failed to report her income for the 1984 and 1985 taxable years. Therefore, we hold that Ms. Heller is liable for the additions to tax under section 6653(a)(1) and (2) for the 1984 and 1985 taxable years. For 1986, Mr. Heller and Ms. Heller were legally separated and, therefore, there was no community income. Ms. Heller reported alimony of only $ 5,200 and other wage income. The temporary court order by which Mr. Heller was to make payments to Ms. Heller did not designate the payments as alimony. Although we have found that a portion of the payments was taxable alimony, we do not think that Ms. Heller was negligent in not reporting *484 the correct amount of alimony when she filed her return. Therefore, we hold that Ms. Heller is not liable for the additions to tax under section 6653(a)(1) and (2) for the 1986 taxable year. Section 6661 provides for an addition to tax for a substantial understatement of income tax. A substantial understatement is an understatement for the taxable year which exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. The understatement does not include any portion for which there is substantial authority for the taxpayer's tax treatment of the item or if there was adequate disclosure in the return. Sec. 6661(b)(2)(B). With respect to Mr. Heller, he claimed that there was no substantial understatement of income tax, but he did not provide adequate disclosure in the return nor did he provide substantial authority for the tax treatment of items in his return. Therefore, if, under the Rule 155 calculations, there is a substantial understatement of income tax, Mr. Heller is liable for the addition to tax under section 6661. Ms. Heller, on her 1984 and 1985 returns, attached an explanation on the last page that she was unable to obtain the necessary *485 information about Mr. Heller's income and that she would file an amended return when the information became available. Ms. Heller did not file an amended return. This type of statement was not the type intended by the statutory provision for an adequate disclosure exception. For adequate disclosure, the statement must identify the item and amount, and it must provide sufficient facts as to apprise the Internal Revenue Service of the nature of the potential controversy concerning the tax treatment of the item. Sec. 1.6661-4(b)(1), Income Tax Regs. Ms. Heller's statement merely informed the Internal Revenue Service as to the lack of information, not that she disputed the tax treatment. She was aware of her obligation to pay tax, as evidenced by her statement to file an amended return when the information became available. Therefore, we hold that if, based on the Rule 155 computations, there is a substantial understatement, Ms. Heller is liable for the addition to tax. Decision will be entered under Rule 155.
Footnotes
1. Plus 50 percent of the interest payable with respect to the portion of the deficiency attributable to negligence.↩
1. Plus 50 percent of the interest payable with respect to the portion of the deficiency attributable to negligence.↩
1. The parties initially disputed whether Mr. Heller or Ms. Heller is entitled to dependency exemptions for the couple's two children for the 1985 and 1986 taxable years. On brief, Mr. Heller conceded that he is not entitled to the dependency exemptions for either 1985 or 1986.↩
2. Section 71(b)(1) provides: Sec. 71(b) Alimony or Separate Maintenance Payments Defined. -- For purposes of this section -- (1) In general. -- The term "alimony or separate maintenance payment" means any payment in cash if -- (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument, (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215, (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse * * *↩
3. Sec. 71(b)(1)(D) as originally enacted required the separation instrument to specifically designate the payment obligations as terminable upon the death of the payee spouse in order for the payments to qualify as alimony or separate maintenance. Pursuant to the technical corrections provisions of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1843(b), 100 Stat. 2853, this requirement was removed retroactive to the original effective date of sec. 71(b). Sec. 1881, Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2914. Accordingly, for the year in issue, the divorce instrument need not expressly state that the payment obligations terminate upon the death of the payee spouse if, for example, the termination would occur by operation of State law. Notice 87-9, 1987-1 C.B. 421↩, 422.
4. Cal. Civ. Code sec. 4801(b) (1983) now appears in substantially identical form in Cal. Fam. Code sec. 4337↩ (1994).